**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA**

VICTORIA OFORIWAH TWUMASI
ANKRAH, on behalf of herself and
others similarly situated,

            Plaintiff,

    v.

STREAMLINE FUNDING, LLC d/b/a
FUNDIBLE,

            Defendant.

Case No. 1:26-cv-00784-JPB

Hon. J.P. Boulee

**DEFENDANT'S BRIEF IN SUPPORT OF ITS MOTION TO DISMISS
PLAINTIFF'S COMPLAINT**

Defendant Streamline Funding, LLC, d/b/a Fundible ("Streamline"), hereby respectfully moves to dismiss Plaintiff's putative class action complaint (*see* Dkt. 1, "Complaint"), in its entirety and with prejudice, pursuant to Fed. R. Civ. P. 12(b)(6).

## I.    INTRODUCTION

Plaintiff's one-count Complaint conclusorily alleges, without sufficient requisite factual support, that Streamline violated certain Do-Not-Call ("DNC") provisions of the federal Telephone Consumer Protection Act ("TCPA"). In this regard, Plaintiff claims that Streamline violated one of the TCPA's implementing DNC regulations, *i.e.,* 47 C.F.R. § 64.1200(c)(2)—a regulation promulgated under Section 227(c) of the statute (*i.e.*, 47 U.S.C. § 227(c)), which on its face regulates only certain "telephone calls" (*i.e.,* "telephone solicitations") made to certain numbers properly listed on the National DNC Registry. Here, Plaintiff bases her DNC claim in

part on *text messages* that she vaguely and inconsistently avers she received from "Defendant and/or their affiliates, agents, and/or other persons or entities acting on Defendant's behalf" on her DNC-registered cell phone number, without her consent. *See, e.g.,* Dkt. 1, ¶¶ 23-30, 72, 74, 75; *see also id.* ¶ 43. Plaintiff pleads virtually nothing about any potentially violative "telephone calls." *See id.* ¶¶ 23-29.

While Plaintiff's Complaint lacks plausible factual support, its primary fatal flaw is a legal one. In this regard, numerous federal district courts—including courts in Eleventh Circuit and in this District in particular—have done a thorough analysis of the applicable TCPA provision Plaintiff invokes here and have correctly concluded that the private cause of action afforded under Section 227(c) can *only* be invoked for unlawful "telephone calls" and not just for any form of telephonic communication, such as text messages.[1] As Plaintiff's only claim against Streamline rests squarely on alleged text messages, and as she pleads no plausible facts about any actionable "telephone calls" (*i.e.*, such that they were "telephone solicitations" within the meaning of the statute), it is doomed to fail as matter of law.

---

[1] *See, e.g., Davis v. CVS Pharmacy, Inc.*, 797 F. Supp. 3d 1270, 1272-1273 (N.D. Fla. 2025) (dismissing text-based DNC claim with prejudice under Rule 12(b)(6) on this basis "because a text message is not a 'telephone call'" under Section 227(c)); *El-Sayed v. Naturopathica Holistic Health, Inc.*, 2025 WL 2997759, at *2 (M.D. Fla. Oct. 24, 2025) (citing *Davis* with approval); *Radvansky v. 1-800-FLOWERS.COM, Inc.*, 2026 WL 456919, at *3-5 (N.D. Ga. Feb. 17, 2026) (**Thrash, J**.) (citing *Davis* and *El-Sayed* with approval and criticizing contrary cases). *See also Richards v. Fashion Nova, LLC*, 2026 WL 847568, at *2-4 (S.D. Ind. Mar. 26, 2026); *Stockdale v. Skymount Property Group, LLC,* 2026 WL 591842, at *2-3 (N.D. Ohio Mar. 3, 2026); *Jones v. Blackstone Med. Servs., LLC*, 792 F. Supp. 3d 894, 899-904 (C.D. Ill. 2025), *appeal filed sub nom.,* No. 25-2398 (7th Cir., Aug. 12, 2025) (each dismissing).

Even if *arguendo* Plaintiff had pled a legally cognizable TCPA claim, her entire Complaint should nevertheless be dismissed on several other grounds:

**First**, it is well-established that all TCPA plaintiffs must first plead plausible facts supporting a viable theory of TCPA liability against the defendant (*i.e.*, direct or vicarious liability) in every case, or they face dismissal under Rule 12(b)(6). This firmly-rooted rule requires Plaintiff here to plausibly allege, with sufficient non-conclusory factual support and without the benefit of any discovery, that Streamline: (i) itself, and not a third party, "physically" sent each of the subject communications directly to her cell number (*i.e.*, direct TCPA liability), or (ii) had a common law agency relationship with a third party who did physically send them (*i.e.*, vicarious TCPA liability). As Plaintiff failed to adequately plead either liability theory in this instance, her entire Complaint collapses and must be dismissed.[2]

**Second**, the TCPA's DNC rules prohibit, *inter alia*, the "initiat[ion]" of more than one "telephone solicitation" call "by or on behalf of the same entity" in a 12-month period to a "residential telephone subscriber who has registered his or her telephone number" on the Registry. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2). As discussed below, Plaintiff fails to plead sufficient facts supporting these elements.

---

[2] *See, e.g.*, *Tuso v Lennar Corp.*, 2024 WL 1239474, at *4 (S.D. Fla. Mar. 22, 2024) (discussing the standards for pleading such theories and, holding: "Because [plaintiff] has failed to allege that the Defendant is liable—either directly or vicariously—his [TCPA] claims must be dismissed."); *Carson v. Home Depot, Inc.*, 2022 WL 2954327, at *5 (N.D. Ga. July 26, 2022) (**Thrash, J**.) (ruling similarly).

## II.    APPLICABLE LEGAL STANDARDS

Under Rule 12(b)(6), a mere "formulaic recitation of the elements" is insufficient to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id*. (quotation marks omitted). A "bare assertion" and "conclusory allegation[s]" also will not suffice to survive a motion to dismiss under this Rule. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007). Instead, Plaintiff must "include factual allegations for each essential element" of her claim. *GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1254 (11th Cir. 2012). But her "[c]onclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal" and are not to be taken as true. *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003); *see also Chaparro v. Carnival Corp., 693* F.3d 1333, 1337 (11th Cir. 2012) ("Factual allegations that are 'merely consistent with a defendant's liability' fall short of being facially plausible.")

## III.    ARGUMENT

As demonstrated below, Plaintiff's Complaint is facially deficient on multiple levels and, as such, it should be dismissed in its entirety under Rule 12(b)(6).

### A.    The Entire Complaint Should Be Dismissed Under Rule 12(b)(6) Because Section 227(c) of the TCPA Does Not Apply to Texts.

As a threshold issue, Plaintiff's text message-based claim fail as a matter of law, and thus should be dismissed under Rule 12(b)(6), because Section 227(c) of the

TCPA provides a private right of action **only** to "[a] person who has received more than one **telephone call** within any 12-month period … in violation of the regulations prescribed under this subsection." 47 U.S.C. § 227(c)(5) (emphasis added). As several courts have correctly observed when dismissing such claims, Section 227(c), which has existed since the statute's enactment, "does not mention text messages or SMS messages, and nowhere does the TCPA define 'telephone call' to include text and/or SMS messages." *Jones*, 792 F. Supp. 3d at 904; *see also Davis*, 797 F. Supp. 3d at 1272 (dismissing **with prejudice** on this basis). Put simply, "[t]he statutory text here is clear that only telephone calls are actionable under § 227(c)(5), not text messages." *Radvansky,* 2026 WL 456919 at *3 (dismissing DNC claim on this basis).

Moreover, as the U.S. Supreme Court recently reiterated, "[e]very statute's meaning is **fixed at the time of enactment**." *Loper Bright Enters. v. Raimondo,* 603 U.S. 369, 400 (2024) (emphasis added). This means that all federal courts "must interpret what Congress wrote" when Section 227(c) was enacted in 1991, and therefore they cannot rewrite it to update it for future technology. *Facebook, Inc. v. Duguid*, 592 U.S. 395, 405, 409 (2021). And it is axiomatic that if a statute's language is plain and unambiguous—like the TCPA's statutory wording certainly is—courts "must enforce it according to its terms." *King v. Burwell,* 135 S.Ct. 2480, 2489 (2015).

Courts have, therefore, correctly concluded that texts are <u>not</u> covered by Section 227(c) because "[t]ext messaging was not an available technology in 1991

[when the TCPA was enacted], and thus 'telephone call' would not have included text messages or SMS messages." *Jones*, 792 F. Supp. 3d at 899 (citing https://time.com/3612277/text-message-history-future/ ("The world's very first text message, sent Dec. 3, 1992...."")). *See also Richards v. Fashion Nova, LLC*, 2026 WL 847568, at *2 (ruling similarly); *Davis*, 797 F. Supp. 3d at 1273 ("***Certainly, no ordinary person would think of a text message as a 'telephone call.' This conclusion—supported by the ordinary public meaning at the time of the provision's enactment—is enough to end this case***.") (emphasis added); *Radvansky*, 2026 WL 456919, at *3 (""[I]n common American English usage, a telephone call and a text message are separate and distinct forms of communication.'") (quoting *El-Sayed*, 2025 WL 2997759, at *2). Consequently, "under a plain reading, Section 227(c)(5) … does not regulate text messages." *Jones*, 792 F. Supp. 3d at 899.

Here, Plaintiff bases her DNC claim against Streamline squarely on two alleged text messages. *See, e.g.,* Dkt. 1, ¶¶ 23-30. But she pleads virtually no plausible facts about the content of any "telephone calls" she allegedly received, from which the Court could reasonably infer that they are actionable "telephone solicitation" calls within the meaning of the statute. *See* discussion at pp. 22-24, *infra*. In other words, because "Plaintiff pled only that [Streamline] violated 47 U.S.C. § 227(c)(5) through sending text messages in violation of 47 C.F.R. § 64.1200(c)," and she did not plead sufficient facts showing that she received any potentially violative "telephone calls,"

6

her entire Complaint "fails as a matter of law" and, therefore, must be dismissed under Rule 12(b)(6) on this basis. *Radvansky* 2026 WL 456919 at *5.

In response to this Motion, Plaintiff may invite this Court to expand the plain language of Section 227(c) to cover all communications to or from a phone. The Court should decline this invitation, as doing so would violate the settled statutory construction principles discussed above and stretch the statute far beyond Congress' express limits to its breaking point. *See Radvansky,* 2026 WL 456919 at *4 (rejecting similar invitation). Indeed, a comprehensive review of the statute's legislative history, plain wording, and overall structure confirms Congress did not employ language suggesting the term "telephone call" as used in Section 227(c), when it was enacted in 1991, would serve as a catchall for any other present or future phone technology.

**First**, Congress has amended the TCPA multiple times since its enactment but has never amended Section 227(c) to include texts. In 2018, for example, Congress amended the statute to address texts in connection with Caller ID requirements, which fall under a different provision of the statute. *See* Consolidated Appropriations Act, 2018, Pub. L. No. 115-141, div. P, § 503(a) (codified at 47 U.S.C. § 227(e)). In doing so, Congress expressly distinguished between "a call made using a voice service" and "a text message sent using a text message service." 47 U.S.C. § 227(e)(8)(A), (B). As Judge Thrash observed, "[t]his distinction" shows that "Congress intended § 227(c)(5) to encompass only telephone calls," and not text messages. 2026 WL 456919, at *4.

7

The foregoing amendment demonstrates three critical points here: (1) Congress knows how to differentiate between technologies when legislating in this space; (2) it did not just assume that texts were already covered by the TCPA's reference to "telephone calls" (or else there would have been no need to amend Section 227(e) to include them); and (3) it did not intend every provision of the TCPA (which function independently from each other[3]) to sweep in text messages. *See also El-Sayed,* 2025 WL 2997759, at *2 ("[T]he term 'text message' appears elsewhere in the TCPA and related amendments, an appearance that confirms Congress understood the pertinent distinction and legislated mindful of the distinction."); *Richards v. Fashion Nova, LLC*, 2026 WL 847568, at *4 ("The reference to text messages in § 227(e) shows that if Congress had wanted § 227(c) to apply to text messages, it knew how to say so."). Improperly expanding the phrase "telephone call" in Section 227(c) to encompass every communication transmitted to or from a phone would not only depart from the statute's plain and unambiguous text, but it also "would likely more than double the number of private causes of action [expressly] authorized by the TCPA." *McGonigle*

---

[3] In actuality, the TCPA was designed to regulate **several independent** types of potential telemarketing concerns, including *inter alia* live voice solicitations (*see* 47 U.S.C. § 227(c)); artificial or pre-recorded voice messages (*see* § 227(b)(1)(B)); auto-dialing to telephones (*e.g.*, cell phones) where the subscriber is charged for the call (*see* § 227(b)(1)(A)(iii)); automated telemarketing to medical or emergency facilities (*see* § 227(b)(1)(A)(i)); the transmission of unsolicited faxes (*see* § 227(b)(1)(C)); and caller ID requirements (*see* § 227(e)). To read "telephone call" in Section 227(c) to cover <u>any</u> form of communication to and from a telephone would sweep in faxes and other types of communications which Congress did not intend to be covered by Section 227(c). Text messages are no different—they are a distinct form of technology that were purposefully given separate statutory treatment by Congress.

*v. Pure Green Franchise Corp.*, 2026 WL 111338, at \*2 (S.D. Fla. Jan. 15, 2026). *See also Radvansky*, 2026 WL 456919, at \*4 (adopting same sound reasoning).

**Second**, Congress defined "telephone solicitation" in 47 U.S.C. § 227(a)(4) to include "the initiation of a telephone call or message." But this section does ***not*** refer to a "'***text*** message'." *Jones*, 792 F. Supp. 3d at 900 (emphasis added). Moreover, Congress' deliberate use of "telephone call or message" in Section 227(a)(4) merely highlights that "telephone call" in Section 227(c) does not encompass all "messages." Rather, "Congress's use of the phrase 'telephone call or message' in a neighboring provision" shows it "does not use the term 'telephone call'" in Section 227(c) "to encompass all 'messages.'" *Davis*, 797 F. Supp. 3d at 1274. *See also Radvansky*, 2026 WL 456919, at \*4 (holding that "construing these distinct phrases identically would render superfluous the different terms Congress chose to use in each subsection, a result which would violate the canon against surplusage") (citing *Sunshine State Reg'l Ctr., Inc. v. Dir., U.S. Citizenship & Immigr. Servs.*, 143 F.4th 1331, 1343 (11th Cir. 2025)); *Richards v. Fashion Nova, LLC*, 2026 WL 847568, at \*3 (ruling similarly).

Indeed, it is well-established that federal district courts interpreting federal statutes must "'presume that, when a statute uses one term in one place and a distinct term elsewhere, the difference matters—that is, the distinct words have different meanings.'" *Davis*, 2025 WL 2491195, at \*4 (quoting *Sunshine State Reg'l Ctr., Inc.*, 143 F.4th at 1344); *see also El Sayed*, 2025 WL 2997759, at \*2 ("'[W]hen Congress

9

uses different terms, we expect that they hold different meanings, especially when the same meaning would render one of the terms superfluous.'" (quoting *Fernandez v. Seaboard Marine Ltd.*, 135 F.4th 939, 958 (11th Cir. 2025)). Thus, where "Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Barajas-Romero v. Lynch*, 846 F.3d 351, 359 (9th Cir. 2017) (quoting *Kucana v. Holder*, 558 U.S. 233, 249 (2010)). This further undermines any argument that text messages are "telephone calls" under the plain and unambiguous language of Section 227(c) of the TCPA.

**Third**, Congress has consistently drawn technology-specific distinctions within the TCPA. For example, although a fax transmission could possibly be described colloquially as a "call" to the extent it is a communication transmitted by a telephone, Congress subjected fax advertisements to a separate regulatory scheme under Section 227(b), rather than Section 227(c), because faxes raise distinct concerns (*e.g.*, the consumption of paper and toner). *See, e.g.*, *Ashland Hosp. Corp. v. Serv. Emps. Int'l Union, Dist. 1199 WV/KY/OH*, 708 F.3d 737, 743 (6th Cir. 2013) (citing S. Rep. No. 102-178, at 4–5 (1991)). As noted above, the same pattern appears throughout the TCPA, which differentiates among autodialed calls, prerecorded voice messages, live calls, and faxes, etc., each of which is assigned different statutory treatment. *See* fn.3, *supra*. *See also El-Sayed,* 2025 WL 2997759, at *2.

10

All this underscores Congress clearly understands the differences among types of communication technologies and did and has repeatedly drawn careful lines between them when legislating in this space. Why Congress purposefully chose not to include text messages in the scope of Section 227(c) is beside the point and does not change the result the Court should reach. In the end, "[w]hatever its reasoning, [Congress] clearly limited the private right [in Section 227(c)] to those receiving 'telephone calls'" and all phone communications. *Davis*, 797 F. Supp. 3d at 1274.

Plaintiff also may refer to other regulations implemented by the FCC over a decade later that mention texts in response to this Motion. That too is a non-starter. The FCC's authority to implement regulations under Section 227(c) was expressly limited to "the establishment and operation of a single national database to compile a list of telephone numbers of residential subscribers who object to receiving telephone solicitations" and *in the 9 months after December 20, 1991*. 47 U.S.C. §§ 227(c)(1) and (2). Those regulations were implemented in *1992*, as authorized, and also do not refer to text messages. *See* 47 C.F.R. § 64.1200(c). Thus, any DNC regulations enacted thereafter exceeded the FCC's limited rule making authority under 227(c).

Further, while the FCC previously stated in 2023 that "calls" do include "text messages" in some instances, that only addressed texts in the context of the TCPA's automated calling provisions, which fall under a different statutory provision, *i.e., Section 227(b). See In re Rules & Regs. Implementing the TCPA*, 18 FCC Rcd. 14014,

11

14115-16 at ¶ 165, n.603-605 (2003); *see also Jones,* 792 F. Supp. 3d at 900 ("[O]n its face…, the 2003 Order explicitly references only Section 227(b)"). Regardless, the FCC's prior interpretations are not entitled to deference today, under recent binding precedent. *See McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.,* 606 U.S. 146, 152 (2025) (holding "the Hobbs Act does not preclude district courts in enforcement proceedings from independently assessing whether an agency's interpretation of the relevant statute is correct"); *Loper,* 603 U.S. at 401 (overruling *Chevron* deference, finding "*Chevron* gravely erred [ ] in concluding that the inquiry is fundamentally different just because an administrative interpretation is in play").

This is true even though Section 227(c) affords some limited rulemaking authority to the FCC. *See Radvansky,* 2026 WL 456919 at *4 (noting "this delegation did not authorize the FCC to determine that 'telephone call' includes text message") (citing *McGonigle*, 2026 WL 111338, at *2). Rather, *McLauglin* merely "calls for 'appropriate respect,' [to prior agency decisions] not 'appropriate deference.' [] And the concepts are different. One can provide 'appropriate respect' to an agency's view without adopting a statutory interpretation that conflicts with the ordinary public meaning of clear statutory text. Thus, even assuming the FCC['s] [2003] Order clearly defined 'telephone calls' as that term is used in § 227(c)(5)"—and it does not— "'appropriate respect' for that conclusion would not require a different outcome here." *Davis*, 797 F. Supp. 3d at 1275 (quoting *McLaughlin*, 606 U.S. at 168).

In sum, after *Loper*, *McKesson*, and *Facebook*, the law is clear that courts should no longer blindly defer to the FCC's prior rulings. Instead, this Court <u>must independently</u> interpret and apply the relevant TCPA provision as written by Congress when it was enacted as "if no agency were involved." *Loper*, 603 U.S. at 401. And it must do so by applying ordinary statutory construction principles, without the influence of modern-day definitions and unconstrained by the FCC's interpretations. *See, e.g., McGonigle*, 2026 WL 111338, at *2; *Stockdale,* 2026 WL 591842, at *2.

Lastly, Plaintiff may also cite other decisions from courts that have ruled differently than the courts in the well-reasoned *Davis*, *Jones*, *El-Sayed*, *Radvansky, Stockdale*, *Richards*, and *McGonigle* cases did on this point. As Judge Thrash noted, however, "the reasoning underlying these decisions is inherently flawed" for many reasons and, therefore, they should not be followed here. 2026 WL 456919 at *4 (criticizing contrary decisions). *See also Stockdale,* 2026 WL 591842, at *3 (same).

Thus, as Plaintiff does not plausibly allege that she received any actionable "telephone calls" as discussed below (*see* pp. 22-24, *infra*), and because text messages alone cannot support a Section 227(c) claim, Plaintiff's only claim fails as a matter of law and her entire Complaint should be dismissed <u>with prejudice</u>. *See Davis*, *supra.*

B.      <u>**The Complaint Should Be Dismissed Under Rule 12(b)(6) Because It Fails to Plead Sufficiently a Direct or Vicarious TCPA Liability.**</u>

Beyond the foregoing legal defect, Plaintiff also fails to plausibly allege a theory of liability under the TCPA against Streamline, which further warrants a

complete dismissal here. Again, it is well-settled there are "two potential theories of liability under the TCPA" that must be adequately pled in all cases in accordance with federal pleadings standards to avoid a dismissal under Rule 12(b)(6): "(1) direct liability; and (2) vicarious liability." *Rogers v. Postmates Inc.*, 2020 WL 3869191, at *3 (N.D. Cal. July 9, 2020) (citing *Thomas v. Taco Bell Corp.,* 582 F.App'x 678, 679 (9th Cir. 2014)). As such, "[f]or a person to 'make' [or 'initiate'] a call under the TCPA, the person must either (1) directly make the call, or (2) have [a common law] agency relationship with the person who made the call." *Pascal v. Agentra, LLC,* 2019 WL 5212961, at *2 (N.D. Cal. Oct. 16, 2019) (quoting *Abante Rooter & Plumbing v. Farmers Grp., Inc.*, 2018 WL 288055, at *4 (N.D. Cal. Jan. 4, 2018)). Courts throughout this Circuit have firmly adopted this rule. *See, e.g., Tuso*, 2024 WL 1239474, at *4; *Belleville*, 2024 WL 2342337, at *4; *Carson*, 2022 WL 2954327, at *5 (each collecting cases and dismissing on these grounds). Furthermore, failure to plausibly allege either theory warrants dismissal of any TCPA claim in its entirety, regardless of whether there were facts pled supporting other elements of the asserted claim. *See, e.g., Tuso, supra.* Here, Plaintiff failed to sufficiently allege either theory.

As to the former, federal district courts have uniformly recognized that direct liability under the TCPA applies only to persons or entities that "initiate" or "make" telemarketing calls, which in this context means to "***physically*** place" a call or send a text directly to the plaintiff. *See, e.g., Sheski v. Shopify (USA) Inc.*, 2020 WL 2474421,

14

at *2 (N.D. Cal. May 13, 2020) (dismissing TCPA claim where the allegations did not "lead to the inference that [defendant] sent or was directly involved in [physically] sending the text messages at issue") (emphasis added) (citing *In re Joint Petition filed by Dish Network, LLC*, 2013 WL 1934349, 28 FCC Rcd. 6574, 6583 ¶ 26 (2013)). *Accord Tuso* and *Belleville, supra. See also Melito v. Am. Eagle Outfitters, Inc.,* 2015 WL 7736547, at *4 (S.D.N.Y. Nov. 30, 2015) (dismissing TCPA claim where "none of [the plaintiff's] factual allegations" in the complaint at bar, "even if accepted as true, establish[ed] direct liability on [the defendant's] part under the TCPA because, put simply, none of those actions involves the making, or physical placement," of a call); *Metzler v. Pure Energy USA LLC*, 2023 WL 1779631, at *6 (S.D.N.Y. Feb. 6, 2023) (dismissing TCPA complaint on this basis, holding TCPA plaintiffs must "allege facts from which the Court can plausibly infer that [d]efendant has direct liability, even if it is also plausible that a third party made the call"); *Brownlee v. Allstate Ins. Co.,* 2021 WL 4306160, at *1–2 (N.D. Ill. Sept. 22, 2021) (dismissing and holding "[a]t the very minimum, plaintiff must allege in her complaint that defendant made each call that she seeks to hold it [directly] liable for.").

Conversely, direct TCPA liability "generally does not include persons or entities, such as third-party retailers, that might merely have some role, however minor, in the causal chain that results in the making of a telephone call." *In re Dish Network, LLC*, 28 FCC Rcd. at 6583. *See also Hossfeld v. Am. Fin. Sec. Life Ins. Co.,*

15

544 F. Supp. 3d 1323, 1331–32 (S.D. Fla. 2021) (dismissing in part and holding that TCPA defendants "cannot be directly liable for calls made by third parties").

Similarly, "[m]erely offering a good or service for sale does not mean that a retailer initiates the marketing calls for that product" for direct TCPA liability purposes. *Wick v. Twilio Inc.,* 2017 WL 2964855, at *3 (W.D. Wash. July 12, 2017). *See also Rogers v. Interstate Nat'l Dealer Servs. Inc.*, 2020 WL 4582689, at *3 (N.D. Ohio Aug. 10, 2020) (calls "on behalf" of a defendant not subject to direct liability); *Bennett v. Celtic Ins. Co.,* 2022 WL 865837, at *3 (N.D. Ill. Mar. 23, 2022) ("[A] defendant 'generally does not initiate calls [within the meaning of the TCPA] placed by third-party telemarketers,' even if the third party had acted on its behalf.").

Courts have also widely (and also correctly) recognized that barren conclusions lacking in specific factual support will not suffice to state a plausible direct TCPA liability theory. As one such court noted, "[m]erely alleging that [a defendant or an agent] 'made' or 'initiated' [a] call" without more "is not sufficient to allege a [direct] TCPA [liability] claim" or to avoid dismissal under Rule 12(b)(6). *Frank v. Cannabis & Glass, LLC,* 2019 WL 4855378, at *2 (E.D. Wash. Oct. 1, 2019). Countless other courts in and beyond this Circuit have ruled similarly. *See, e.g., Tuso,* 2024 WL 1239474, at *4 (dismissing where plaintiff's "conclusory statement" as to direct liability was insufficient); *Belleville,* 2024 WL 2342337, at *4 (ruling similarly); *Rogers v. Assurance IQ, LLC*, 2023 WL 2646468, at *5 (W.D. Wash. Mar. 27, 2023)

16

(dismissing on this basis where the plaintiffs concluded one defendant "physically" placed the subject calls, noting that "[p]laintiffs have not pleaded any *facts* supporting their inference that [defendant] physically dialed the calls to four of the individual plaintiffs" (emphasis in original)); *Wilson v. MEDVIDI Inc.*, 2025 WL 2856295, at *4 (N.D. Cal. Oct. 7, 2025) (dismissing on this basis and holding: "Despite Plaintiff's conclusory allegation that the text messages were sent by Defendant, the complaint provides no factual details plausibly suggesting that Defendant actually sent them. There is no discussion, for example, of any investigation Plaintiff conducted to form the understanding that Defendant operated the separate phone numbers from which these messages were sent.").[4]

In short, "[a]s a party to these calls, Plaintiff 'should be able [and indeed is *legally required*] to provide greater detail" to plausibly allege a TCPA liability theory under Rule 12(b)(6). *Matthews,* 2025 WL 1181789, at *3 (quoting *Scruggs v. CHW Grp., Inc.,* 2020 WL 9348208, at *6 (E.D. Va. Nov. 12, 2020)). *See also Bank v.*

---

[4] While various provisions of the TCPA use the terms "make" or "initiate" somewhat interchangeably, courts evaluating and ultimately dismissing conclusory direct TCPA liability claims, like Plaintiff's here, have uniformly held that "make" or "initiate" in this context means to "physically" place calls or send texts directly to the named plaintiff. *See also Meeks v. Buffalo Wild Wings, Inc.*, 2018 WL 1524067, at *3–5 (N.D. Cal. Mar. 28, 2018); *Aaronson v. CHW Grp., Inc.,* 2019 WL 8953349, at *2 (E.D. Va. Apr. 15, 2019); *Smith v. Direct Building Supplies, LLC*, 2021 WL 4623275, at *3 (E.D. Pa. Oct. 7, 2021); *Barnes v. SunPower Corp.,* 2023 WL 2592371, at *3 (N.D. Cal. Mar. 16, 2023); *Cunningham v. Daybreak Solar Power, LLC*, 2023 WL 3985245, at *2 (N.D. Tex. June 13, 2023) (each dismissing). *See also Hurley v. Messer*, 2018 WL 4854082, at *4 (S.D.W.Va. Oct. 4, 2018) (dismissing TCPA claim on this basis and noting that "allowing discovery where [p]laintiff has failed to allege a plausible claim would be directly contrary to the mandates of *Iqbal* and *Twombly*").

*Alleviate Tax, LLC*, 2024 WL 1332635, at *5, n.6 (E.D.N.Y. Mar. 28, 2024) (dismissing TCPA claim, noting that "simply asserting a purported fact does not make it one, where there are no factual allegations to support the asserted conclusion").

Applying these firmly-rooted legal principles here dooms Plaintiff's entire Complaint. As noted above, beyond simply repeating the statutory text and case law, Plaintiff vaguely avers that the subject communications were initiated by "Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf" in purported violation of the TCPA. See, e.g., Dkt. 1, ¶¶ 72, 74, 75. *See also id.* ¶ 43 (referring to communications "from Defendant or a third party acting on Defendant's behalf"). In other words, Plaintiff concludes that ***either Streamline or countless unidentified third parties called her***. Even if this Court takes these few ill-pled allegations as true (and it should not under *Iqbal/Twombly*), however, courts have found such equivocating allegations are "woefully insufficient to state a claim of ***any sort***." *Maldonado-Rodriguez v. Citibank, N.A.*, 2013 WL 350814, at *5 (N.D. Ind. Jan. 28, 2013) (emphasis added). Such is particularly true when it comes to pleading TCPA claims, as courts have squarely rejected such a flawed "either/or" approach to pleading TCPA liability theories. *See, e.g., Belleville*, 2024 WL 2342337, at *1-4 (dismissing, even though one caller said they were calling "from" the defendant and provided its website, where plaintiff merely alleged "in conclusory fashion that Defendant was directly involved in making" the subject calls); *see also Doyle v.*

18

*GoHealth, LLC*, 2023 WL 3984951, at *4–6 (D.N.J. Mar. 30, 2023) (dismissing, and holding plaintiff's allegations the alleged calls were "from Defendant, its employees and/or agents" were insufficient for directly liability, standing alone); *Barnes,* 2023 WL 2592371, at *1-3 (dismissing on this basis, even though one plaintiff allegedly spoke to someone "who identified herself as working for" defendant, and the other received a "call back number" for defendant by the caller); *Dobronski v. Russo*, 2024 WL 4363118, at *5 (E.D. Mich. Sept. 30, 2024) (dismissing on this basis and holding that a plaintiff "simply alleg[ing] that 'Defendants or Defendants' agent' initiated calls" was insufficient to plead any TCPA liability theory without more); *Brown v. Nano Hearing Tech OPCP, LLC*, 2024 WL 3367536, at *3 (S.D. Cal. July 9, 2024) (dismissing on this basis where plaintiff concluded the caller's "numbers belonged to [defendant] Nano or Nano's agent," without additional supporting facts).

That some of the callers indicated they were "with Fundable" (Dkt. 1, ¶¶ 24, 29, 30) is of no moment here. In fact, courts have widely recognized that even a call or text allegedly offering the defendant's products, identifying the defendant by name, and/or originating from the defendant in some fashion does <u>not</u>, standing alone, allow for a plausible inference that the defendant itself (and not a third party) physically made or initiated any call for direct liability purposes. *See*, *e.g.*, *Belleville*, 2024 WL 2342337, at *1-4 (dismissing on this basis, even though one caller allegedly said they were calling "from" the defendant and provided the defendant's website); *Meeks*,

2018 WL 1524067, at *1–5 (finding no direct liability, even though at-issue communication identified the defendant by name and contained a link to its website); *Scruggs*, 2020 WL 9348208, at *6-10 (dismissing on this basis, calls from someone who stated they were "associated with" the defendant deemed insufficient, without more); *Murray v. Choice Energy, LLC*, 2015 WL 4204398, at *2 (S.D. Ohio July 10, 2015) (dismissing on this basis, even though plaintiff was "informed that the call was from Choice Energy," where there were "no factual allegations … that Choice Energy had any active role or involvement in [physically] placing the calls"). Together, these authorities (among others) show the alleged content of the subject communications alone is not dispositive of this issue, and that more factual enhancement is necessary.

Moreover, Plaintiff's Complaint is perhaps more notable for the facts it does not contain on this front, rather than what few (if any) it does. For example, Plaintiff does not allege, *inter alia*, that: (i) Streamline owns or uses any of the numbers allegedly used to call Plaintiff; (ii) she called any of those numbers back and reached Streamline; (iii) any caller identified themselves as an Streamline "employee"; or (iv) her Caller ID identified "Streamline" (or "Fundible") as the caller—all of which could support an inference of direct liability in some cases, as other courts have held. *See, e.g., Matthews,* 2025 WL 1181789, at *3; *Wilson,* 2025 WL 2856295, at *4; *Aaronson*, 2019 WL 8953349, at *2-3; *Rogers*, 2023 WL 2646468, at *5; *Doyle*, 2023 WL 3984951, at *4-6; *Smith*, 2021 WL 4623275, at *3-4; *Bank v. Vivint Solar, Inc.*,

20

2019 WL 2280731, at *2 (E.D.N.Y. Feb. 25, 2019), *report and rec. adopted*, 2019 WL 1306064 (Mar. 22, 2019) (each dismissing where complaints lacks such critical details about the calls). The omission of such facts warrants dismissal on this basis.

Lastly, the well-accepted touchstone of a common law agency relationship in the TCPA context, as is required for vicarious TCPA liability, are plausible factual allegations suggesting that the defendant had specific "control" over the literal "manner and means" of any third-party caller's telemarketing campaign, as opposed to control over an agent generally. *See, e.g., Meeks*, 2018 WL 1524067, at *6; *Cunningham*, 2023 WL 3985245, at *2; *Rogers*, 2023 WL 2646468, at *6 (same); *Bank v. Vivint Solar, Inc.*, 2019 WL 2280731, at *2 (each dismissing where the complaint lack facts supporting inference of control). Given the absence of such facts, Plaintiff's Complaint must also be dismissed on vicarious TCPA liability grounds. *See, e.g., Abramson v. 1 Glob. Capital, LLC*, 2015 WL 12564318, at *3 (S.D. Fla. Sept. 23, 2015) (dismissing on this basis where the plaintiff's "allegations of vicarious [TCPA] liability [we]re conclusory in nature" and unsupported by specific facts).

### C.  <u>The Entire Complaint Should Also Be Dismissed As Plaintiff Fails to Plead Facts Supporting Other Key Elements of Her Claim.</u>

Plaintiff's Complaint is also ripe for dismissal in its entirety because Plaintiff fails to plead sufficient facts supporting other essential elements of her DNC claim.

**First**, Section 227(c) of the TCPA, on its face, "relates solely to telemarketing and solicitation calls" as opposed to all supposedly "unwanted" calls. *Warnick v. Dish*

21

*Network LLC,* 301 F.R.D. 551, 558 fn. 3 (D. Colo. 2014). Thus, to avoid dismissal here, Plaintiff must also properly plead facts suggesting receipt of a "telephone solicitation," which is defined in the implementing regulations as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 C.F.R. § 64.1200(f)(15).

To meet federal pleading standards in this regard, though, "[c]all recipients must do more than" just baldly conclude that "the calls in question were telephone solicitations" to adequately state such claim. *Weingrad v. Top Healthcare Options Ins. Agency Co.,* 2024 WL 4228149, at *4 (E.D. Pa. Sept. 17, 2024). Courts have, therefore, consistently dismissed DNC claims at the pleadings stage where, as here, the plaintiff parrots the statute and relies on conclusory labels like "advertisement" or "solicitation" but omits additional requisite factual enhancement. *See, e.g., Eggleston v. Reward Zone USA LLC,* 2022 WL 886094, at *7 (C.D. Cal. Jan. 28, 2022); *Bell v. Hawx Servs., LLC*, 2025 WL 2533371, at *3-4 (E.D. Cal. Sept. 3, 2025) (citing, *inter alia*, *Gulden v. Consol. World Travel Inc.*, 2017 WL 3841491, at *3 (D. Ariz. Feb. 15, 2017), *Andersen v. Nexa Mortg., LLC,* 2024 WL 3762098, at *2 (C.D. Cal. Aug. 12, 2024), and *Greene v. Select Funding, LLC,* 2021 WL 4926495, at *5 (C.D. Cal. Feb. 5, 2021)); *Gillam v. Reliance First Capital, LLC,* 2023 WL 2163775, at *3-4 (E.D.N.Y. Feb. 22, 2023); *Dahdah v. Rocket Mortgage LLC*, 2023 WL 5941730, at

22

*3 (E.D. Mich. Sept. 12, 2023), *vacated on other grounds by* 2023 WL 11944898, at *1 (Nov. 17, 2023); *Weingrad*, 2024 WL 4228149, at *4. So should this Court.

In this case, Plaintiff pleads no plausible facts, beyond her conclusory labels, about the content of any telephone calls that she allegedly received from which this Court could reasonably infer that they meet the statutory definition above—let alone facts on which to infer they were placed directly by, originated from, or even involved Streamline. *See, e.g.,* Dkt. 1, ¶¶ 23, 26-28, 31, 34. Indeed, the only content of any telephone call provided in the Complaint relates to a single voicemail. *Id*. ¶ 29. Even if *arguendo* Plaintiff's conclusory allegations were enough to demonstrate that this one call qualified as a "telephone solicitation" as defined by the TCPA, the DNC rules require **more than one** violative telephone call in a 12-month period. *See* 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2). One such call will not support a claim. *See, e.g., Greene,* 2021 WL 4926495, at *5; *Gillam,* 2023 WL 2163775, at *3.

Moreover, Plaintiff admits that all the subject communications were "meant" for "someone other than" Plaintiff named "Tyler," and were sent in response to an inquiry by that person, and thus that *she* was not being solicited. Dkt. 1, ¶¶ 24, 29, 30, 32. Therefore, Plaintiff tacitly concedes that these communications were not "telephone solicitations" fitting the TCPA's statutory definition above. *See, e.g., Dahdah*, 2023 WL 5941730, at *3 (dismissing on this basis where, like here, the subject communications were "looking to speak with someone other than" the named

23

plaintiff); *Horton v. Molina Healthcare of Texas, Inc.,* 2026 WL 490216, at *9 (N.D. Tex. Feb. 6, 2026), *report and rec. adopted* 2026 WL 488753 (Feb. 20, 2026) (dismissing on this basis because "[t]here [was] no allegation that these calls requested [the named plaintiff] to purchase anything at all"); *Murphy v. DCI Biologicals Orlando, LLC*, 2013 WL 6865772, at *10 (M.D. Fla. Dec. 31, 2013), *aff'd* 797 F.3d 1302 (11th Cir. 2015) (ruling similarly and dismissing DNC claim).

**Second**, a phone call is *not* a "telephone solicitation" by definition where it is made pursuant to an "established business relationship" with the called party. 47 C.F.R. § 64.1200(f)(15)(i)-(ii); *see also* 47 C.F.R. § 64.1200(f)(5) (defining the term "established business relationship"). Here, while Plaintiff claims that she did not provide her consent (*see, e.g.,* Dkt. 1, ¶ 36), she says nothing about whether she had an established business relationship with the alleged caller(s) in this instance. This is also fatal to her DNC claim. *See Gillam,* 2023 WL 2163775, at *3 (dismissing DNC claim on this basis where plaintiff did not allege the lack of such a relationship).

**Third**, the TCPA's implementing regulations expressly prohibit initiating telephone solicitations to a "residential telephone subscriber *who has registered his or her telephone number*" on the National DNC Registry. 47 C.F.R. § 64.1200(c)(2) (emphasis added). As other courts have found, a plain reading of the unambiguous language of this regulation requires Plaintiff here to plausibly allege that she registered *her own* phone numbers on which she allegedly received the subject calls on the

24

National DNC Registry to avoid a dismissal on this basis. *See, e.g., Rogers,* 2023 WL 2646468, at *4 (dismissing DNC claim in part for this reason); *Rombough v. Robert D. Smith Ins. Agency, Inc.,* 2022 WL 2713278, at *2-4 (N.D. Iowa June 9, 2022) (thoroughly analyzing this issue, dismissing DNC claim *with prejudice* on this basis). That plain reading of this regulation harmonizes it with the statutory language in which Congress authorized the creation of a registry of "residential subscribers ***who object*** to ***receiving telephone solicitations***." 47 U.S.C. § 227(c)(3) (emphasis added).

In this instance, Plaintiff does not indicate *who* registered the phone number upon which she received the at-issue communications, only that it has "been registered" on the National DNC Registry for over 20 years. *See* Dkt. 1, ¶ 22. This inartful pleading suggests that Plaintiff's "numbers could have been registered by previous owners of th[e] numbers rather than by Plaintiff[.]" *Rogers*, 2023 WL 2646468, at *4. Moreover, dismissal is particularly appropriate in this instance given that "[t]hese are facts that are easily within the knowledge of Plaintiff[] and can be pleaded to remove any doubt about whether [Plaintiff] actually registered [her] own number[] on the DNC list[.]" *Id.* The Complaint fails for this additional reason.

## IV.   <u>CONCLUSION</u>

For these reasons, the Court should dismiss Plaintiff's entire Complaint under Rule 12(b)(6) with prejudice, along with granting Streamline all other just relief.

Dated: April 2, 2026   Respectfully submitted,

         By: /s/ Stephen D. Libowsky

         **MANATT, PHELPS & PHILLIPS, LLP**

         Stephen D. Libowsky (GA Bar No. 451965)
         151 N. Franklin Street, Suite 2600
         Chicago, Illinois 60606
         Tel: (312) 529-6300
         Email: slibowsky@manatt.com

         *Counsel for Defendant*

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(D), the undersigned hereby certifies that this document has been prepared in accordance with Local Rule 5.1(C).

Dated: April 2, 2026                                    Respectfully submitted,

                                                        */s/ Stephen D. Libowsky*

                                                        Stephen D. Libowsky

## CERTIFICATE OF SERVICE

I hereby certify that I filed the foregoing document electronically on the Court's CM/ECF docket which served same electronically upon all counsel of record.

Dated: April 2, 2026                                    Respectfully submitted,

                                                        */s/ Stephen D. Libowsky*

                                                        Stephen D. Libowsky