**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA**

| | |
|---|---|
| VICTORIA OFORIWAH TWUMASI ANKRAH, on behalf of herself and others similarly situated,<br><br>        Plaintiff,<br><br>    v.<br><br>STREAMLINE FUNDING, LLC d/b/a FUNDIBLE,<br><br>        Defendant. | Case No. 1:26-cv-00784-JPB<br><br>Hon. J.P. Boulee |

**DEFENDANT'S BRIEF IN SUPPORT OF ITS MOTION TO DISMISS
PLAINTIFF'S FIRST AMENDED COMPLAINT**

Defendant Streamline Funding, LLC, d/b/a Fundible ("Streamline"), hereby respectfully moves to dismiss Plaintiff's First Amended Complaint (*see* Dkt. 12, the "FAC"), in its entirety and with prejudice, pursuant to Fed. R. Civ. P. 12(b)(6).

## I.    INTRODUCTION

Like its faulty predecessor, Plaintiff's FAC conclusorily alleges, *inter alia*, that Streamline violated certain Do-Not-Call ("DNC") provisions of the Telephone Consumer Protection Act ("TCPA"). In particular, Plaintiff primarily claims that Streamline violated one of the TCPA's implementing DNC regulations, *i.e.,* 47 C.F.R. § 64.1200(c)(2)—a regulation promulgated under Section 227(c) of the statute (*i.e.*, 47 U.S.C. § 227(c)), which on its face affords a private cause of action only for certain types of "telephone calls" (*i.e.,* "telephone solicitations") made to certain numbers properly listed on the National DNC Registry. However, Plaintiff still bases her TCPA

claim *entirely on text messages* that she vaguely avers she received on her DNC-registered cell phone number, without her consent. *See, e.g.,* Dkt. 12, ¶¶ 20-46.[1]

While Plaintiff's FAC still lacks plausible factual support even after amendment, its primary fatal flaw is a legal one. In this regard, numerous federal district courts—including courts in Eleventh Circuit and in this District in particular—have done a thorough analysis of the applicable TCPA provision Plaintiff invokes here and have correctly concluded that the private cause of action afforded under Section 227(c) can *only* be invoked for unlawful "telephone calls" and not just for any form of telephonic communication, such as text messages.[2] As Plaintiff's TCPA claim in Count I here rests entirely on text messages, it is doomed to fail as matter of law.

Even if *arguendo* Plaintiff had pled a legally cognizable TCPA claim, her entire FAC should nevertheless be dismissed with prejudice on several other grounds:

**First**, it is well-established that all TCPA plaintiffs must first plead plausible facts supporting a viable theory of TCPA liability against the defendant (*i.e.*, direct or vicarious liability) in every case, or they face dismissal under Rule 12(b)(6). This firmly-rooted rule requires Plaintiff here to plausibly allege, with sufficient non-

---

[1] She confirms she "is not pursuing the voice calls as a TCPA violation." *Id*. ¶ 38.

[2] *See, e.g., Davis v. CVS Pharmacy, Inc.*, 797 F. Supp. 3d 1270, 1272-1273 (N.D. Fla. 2025); *El-Sayed v. Naturopathica Holistic Health, Inc.*, 2025 WL 2997759, at *2 (M.D. Fla. Oct. 24, 2025); *Radvansky v. 1-800-FLOWERS.COM, Inc.,* 2026 WL 456919, at *3-5 (N.D. Ga. Feb. 17, 2026) (**Thrash, J**.); *James v. Smarter Contact, Inc.,* 2026 WL 879244, at *3-5 (M.D. Fla. Mar. 31, 2026); *Irvin v. Sonic Indus. Servs., LLC*, Case No. 3:25-cv-242-LMM (N.D. Ga.) (**May, J**.), Dkt. 21, at pp. 3-13 (same), attached hereto as Exhibit ("Ex.") A. (each dismissing on this basis).

conclusory factual support, that Streamline: (i) itself, not a third party, "physically" sent each of the subject communications directly to her cell number (*i.e.*, direct TCPA liability), or (ii) had a common law agency relationship with a third party who did physically send them (*i.e.*, vicarious TCPA liability). Plaintiff failed to adequately plead either liability theory here, which further warrants dismissal of her FAC.[3]

**Second**, the TCPA's DNC rules prohibit, *inter alia*, the "initiat[ion]" of more than one "telephone solicitation" call "by or on behalf of the same entity" in a 12-month period to a "residential telephone subscriber who has registered his or her telephone number" on the Registry. 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2). As Plaintiff fails to plead sufficient facts supporting these elements, Count I fails.

**Third**, Plaintiff's FAC adds a duplicative claim under Georgia's analog DNC statute for Count II. As it is based on the same fatally flawed allegations as her primary TCPA claim in Count I, it naturally fails and should be dismissed, as well.

## II.    APPLICABLE LEGAL STANDARDS

Under Rule 12(b)(6), a mere "formulaic recitation of the elements" is insufficient to state a claim. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "Nor does a

---

[3] *See, e.g.*, *Sheski v. Shopify (USA) Inc.*, 2020 WL 2474421, at *2 (N.D. Cal. May 13, 2020) (discussing key differences between direct and vicarious TCPA liability and dismissing where complaint lacked factual support); *Tuso v Lennar Corp.*, 2024 WL 1239474, at *4 (S.D. Fla. Mar. 22, 2024) ("Because [plaintiff] has failed to allege that the Defendant is liable—either directly or vicariously—his [TCPA] claims must be dismissed."); *Belleville v. Florida Insur. Services, Inc.*, 2024 WL 2342337, at *4 (S.D. Fla. May 23, 2024), *report and rec. adopted in part and rejected in part*, 2024 WL 2794108 (May 31, 2024) (dismissing on these grounds); *Carson v. Home Depot, Inc.*, 2022 WL 2954327, at *5 (N.D. Ga. July 26, 2022) (**Thrash, J.**) (same).

3

complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id.* (quotation marks omitted). A "bare assertion" and "conclusory allegation[s]" also will not suffice to survive a motion to dismiss under this Rule. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556-57 (2007). Instead, Plaintiff must "include factual allegations for each essential element" of her claim. *GeorgiaCarry.Org, Inc. v. Georgia*, 687 F.3d 1244, 1254 (11th Cir. 2012). Moreover, any "[c]onclusory allegations, unwarranted factual deductions or legal conclusions masquerading as facts will not prevent dismissal" and are not to be taken as true under this Rule; only well-pled facts can be. *Davila v. Delta Air Lines, Inc.*, 326 F.3d 1183, 1185 (11th Cir. 2003); *Chaparro v. Carnival Corp., 693* F.3d 1333, 1337 (11th Cir. 2012).

## III.    ARGUMENT

### A.    Section 227(c) of the TCPA Does Not Apply to Texts.

As a threshold issue, Plaintiff's text message-based TCPA claim fails as a matter of law, and thus should be dismissed under Rule 12(b)(6), because Section 227(c) of the TCPA provides a private right of action ***only*** to "[a] person who has received more than one ***telephone call*** within any 12-month period … in violation of the regulations prescribed under this subsection." 47 U.S.C. § 227(c)(5) (emphasis added). As several courts have correctly observed when dismissing such claims, Section 227(c), which has existed since the statute's enactment, "does not mention text messages or SMS messages, and nowhere does the TCPA define 'telephone call'

4

to include text and/or SMS messages." *Jones v. Blackstone Med. Servs., LLC*, 792 F. Supp. 3d 894, 904 (C.D. Ill. 2025), *appeal filed sub nom.,* No. 25-2398 (7th Cir., Aug. 12, 2025); *see also Davis*, 797 F. Supp. 3d at 1272 (dismissing **with prejudice** on this basis). Put simply, "[t]he statutory text here is clear that only telephone calls are actionable under § 227(c)(5), not text messages." *Radvansky,* 2026 WL 456919 at *3.

Moreover, as the U.S. Supreme Court recently reiterated, "[e]very statute's meaning is ***fixed at the time of enactment***." *Loper Bright Enters. v. Raimondo,* 603 U.S. 369, 400 (2024) (emphasis added). This means that all federal courts "must interpret what Congress wrote" when Section 227(c) was enacted in 1991, and therefore they cannot rewrite it to update it for future technology. *Facebook, Inc. v. Duguid*, 592 U.S. 395, 405, 409 (2021). And it is axiomatic that if a statute's language is plain and unambiguous—like the TCPA's statutory wording certainly is—courts "must enforce it according to its terms." *King v. Burwell,* 135 S.Ct. 2480, 2489 (2015).

Numerous courts have, therefore, correctly concluded that texts are <u>not</u> covered by Section 227(c) because "[t]ext messaging was not an available technology in 1991 [when the TCPA was enacted], and thus 'telephone call' would not have included text messages or SMS messages." *Jones*, 792 F. Supp. 3d at 899 (citing https://time.com/3612277/text-message-history-future/ ("The world's very first text message, sent Dec. 3, 1992….")). *See also Radvansky,* 2026 WL 456919, at *3 ("'[I]n common American English usage, a telephone call and a text message are separate

5

and distinct forms of communication.'") (quoting *El-Sayed*, 2025 WL 2997759, at *2); *Davis*, 797 F. Supp. 3d at 1273 (ruling similarly); Ex. A at p. 8 (same). Thus, "under a plain reading" of the unambiguous language, which is dispositive, "Section 227(c)(5) … does not regulate text messages." *Jones*, 792 F. Supp. 3d at 899.[4]

Here, Plaintiff bases her DNC claim against Streamline <u>entirely</u> on two alleged text messages and is "***not*** pursuing the voice calls" alleged in the FAC "as a TCPA violation." *See, e.g.,* Dkt. 1, ¶¶ 23-30, 38 (emphasis added). Because "Plaintiff pled only that [Streamline] violated 47 U.S.C. § 227(c)(5) through sending text messages in violation of 47 C.F.R. § 64.1200(c)," her entire FAC "fails as a matter of law" and, therefore, must be dismissed under Rule 12(b)(6). *Radvansky* 2026 WL 456919 at *5.

In response, Plaintiff may invite this Court to expand the plain language of Section 227(c) to cover <u>all</u> communications to or from a phone. The Court should decline, as doing so would stretch the statute far beyond its plain language and Congress' express limits to its breaking point. *See Radvansky,* 2026 WL 456919 at *4 (rejecting similar invitation). In fact, a comprehensive review of the TCPA's legislative history, plain wording, and overall structure confirms that Congress did <u>not</u> employ language suggesting the term "telephone call" used in § 227(c), when it was enacted, would serve as a catchall for any other present or future phone technology.

---

[4] *See also Richards v. Fashion Nova, LLC*, 2026 WL 847568, at *2-4 (S.D. Ind. Mar. 26, 2026); *Richards v. Shein Distrib. Corp.*, 2026 WL 847584, at *3 (S.D. Ind. Mar. 26, 2026); *Stockdale v. Skymount Property Group, LLC,* 2026 WL 591842, at *2-3 (N.D. Ohio Mar. 3, 2026) (conducting similar analysis and dismissing DNC claims).

**First**, Congress has amended the TCPA multiple times since its enactment but has <u>never</u> amended Section 227(c) to include texts. In 2018, for example, Congress amended the statute to address texts in connection with Caller ID requirements, which fall under a different provision of the statute. *See* Consolidated Appropriations Act, 2018, Pub. L. No. 115-141, div. P, § 503(a) (codified at 47 U.S.C. § 227(e)). In doing so, Congress expressly distinguished between "a call made using a voice service" and "a text message sent using a text message service." 47 U.S.C. § 227(e)(8)(A), (B). As noted in *Radvansky*, "[t]his distinction" shows that "Congress intended § 227(c)(5) to encompass only telephone calls," and not text messages. 2026 WL 456919, at *4.

The foregoing amendment demonstrates three critical points here: (1) Congress knows how to differentiate between technologies when legislating in this space; (2) it did not just assume that texts were already covered by the TCPA's reference to "telephone calls" (or else there would have been no need to amend Section 227(e) to include them); and (3) it did not intend every provision of the TCPA (which function independently from each other[5]) to sweep in text messages. *See also El-Sayed,* 2025 WL 2997759, at *2 ("[T]he term 'text message' appears elsewhere in the TCPA and

---

[5] In actuality, the TCPA was designed to regulate **several independent** types of potential telemarketing concerns, including *inter alia* live voice solicitations (*see* 47 U.S.C. § 227(c)); artificial or pre-recorded voice messages (*see* § 227(b)(1)(B)); auto-dialing to telephones (*e.g.*, cell phones) where the subscriber is charged for the call (*see* § 227(b)(1)(A)(iii)); automated telemarketing to medical or emergency facilities (*see* § 227(b)(1)(A)(i)); the transmission of unsolicited faxes (*see* § 227(b)(1)(C)); and caller ID requirements (*see* § 227(e)). Text messages are no different—they are a distinct form of technology that raise separate concerns that voice calls and thus were purposefully given separate statutory treatment by Congress in the TCPA.

related amendments, an appearance that confirms Congress understood the pertinent distinction and legislated mindful of the distinction."). Expanding the phrase "telephone call" in Section 227(c) to encompass every communication transmitted to or from a phone would not only depart from the statute's plain and unambiguous text, but it also "would likely more than double the number of private causes of action [expressly] authorized by the TCPA." *McGonigle v. Pure Green Franchise Corp.*, 2026 WL 111338, at *2 (S.D. Fla. Jan. 15, 2026). *See also Radvansky*, 2026 WL 456919, at *4 (citing *McGonigle* and adopting same reasoning); Ex. A at p. 11 (same).

**Second**, Congress defined "telephone solicitation" in 47 U.S.C. § 227(a)(4) to include "the initiation of a telephone call or message." Though this does not refer to "text messages," Congress' deliberate use of "telephone call or message" in a "neighboring provision" merely highlights that the term "telephone call" as used in Section 227(c) does <u>not</u> encompass all "messages." *Davis*, 797 F. Supp. 3d at 1274. *See also Radvansky*, 2026 WL 456919, at *4 ("construing these distinct phrases identically would render superfluous the different terms Congress chose to use in each subsection, a result which would violate the canon against surplusage") (citing *Sunshine State Reg'l Ctr., Inc. v. Dir., U.S. Citizenship & Immigr. Servs.*, 143 F.4th 1331, 1343 (11th Cir. 2025)); Ex. A at pp. 8-9 (ruling similarly, citing *Radvansky*).

Indeed, it is well-established that federal courts interpreting federal statutes must "'presume that, when a statute uses one term in one place and a distinct term

elsewhere, the difference matters—that is, the distinct words have different meanings.'" *Davis*, 797 F. Supp. 3d at 1274 (quoting *Sunshine State Reg'l Ctr., Inc.,* 143 F.4th at 1344); *see also El-Sayed*, 2025 WL 2997759, at *2 ("'[W]hen Congress uses different terms, we expect that they hold different meanings, especially when the same meaning would render one of the terms superfluous.'" (quoting *Fernandez v. Seaboard Marine Ltd.*, 135 F.4th 939, 958 (11th Cir. 2025)). Thus, where "Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Barajas-Romero v. Lynch*, 846 F.3d 351, 359 (9th Cir. 2017) (quoting *Kucana v. Holder*, 558 U.S. 233, 249 (2010)).

**Third**, Congress has consistently drawn technology-specific distinctions within the TCPA. For example, although a fax transmission could possibly be described colloquially as a "call" to the extent it is a communication transmitted by a telephone, Congress subjected fax advertisements to a separate regulatory scheme under Section 227(b), rather than Section 227(c), because faxes raise distinct concerns (*e.g.*, the consumption of paper and toner). *See, e.g.*, *Ashland Hosp. Corp. v. Serv. Emps. Int'l Union, Dist. 1199 WV/KY/OH*, 708 F.3d 737, 743 (6th Cir. 2013) (citing S. Rep. No. 102-178, at 4–5 (1991)). As noted above, the same pattern appears throughout the TCPA, which differentiates among autodialed calls, prerecorded voice messages, live calls, and faxes, etc., each of which is assigned different statutory

treatment. *See* fn.5, *supra*. *See also El-Sayed,* 2025 WL 2997759, at *2. The same is true for texts: "Congress could reasonably conclude that unwanted telephone calls are more bothersome and intrusive than unwanted text messages, and it could provide broader protections against the former than the latter" and thus purposefully treated texts differently than calls. Ex. A at p. 9 (quoting *Davis*, 797 F. Supp. 3d at 1274).[6]

All this underscores that Congress clearly understands the differences among types of communication technologies and did and has repeatedly drawn careful lines between them when legislating in this space. Why Congress purposefully chose not to include text messages in the scope of Section 227(c) is beside the point and does not change the result this Court should reach. Nor do courts have the power to rewrite that section to account for technologies Congress chose not to regulate. *See Jones*, 792 F. Supp. 3d at 901-02, at *4; *Fashion Nova*, 2026 WL 847568, at *4-5; *Shein*, 2026 WL 847584, at *4-5. In the end, "[w]hatever its reasoning, [Congress] clearly limited the private right [in Section 227(c)] to those receiving 'telephone calls'" and not to all phone-related communications, like texts. *Davis*, 797 F. Supp. 3d at 1274.

Further, while the FCC previously stated in 2003 that "calls" do include "text messages" in some instances, that only addressed texts in the context of the TCPA's

---

[6] Moreover, when looking into this same issue, numerous courts have found that voice calls and text messages differ "in several important ways" including that texts, unlike voice calls, "do[] not require that a person pick up a call, listen to a voice, or tie up their phone's line." *Fashion Nova*, 2026 WL 847568, at *3. *See also Stockdale* 2026 WL 591842, at *4 (ruling similarly); *James*, 2026 WL 879244, at *3–5 (same).

automated calling provisions, which fall under a different statutory provision, *i.e.,* Section 227*(b)*. *See In re Rules & Regs. Implementing the TCPA*, 18 FCC Rcd. 14014, 14115-16 at ¶ 165, n.603-605 (2003); *see also Jones,* 792 F. Supp. 3d at 900 ("[O]n its face…, the 2003 Order explicitly references only Section 227(b)").[7]

Plaintiff also may refer to other regulations implemented by the FCC over a decade later that mention texts in response to this Motion. That too is a non-starter. The FCC's authority to implement regulations under Section 227(c) was expressly limited to "the establishment and operation of a single national database to compile a list of telephone numbers of residential subscribers who object to receiving telephone solicitations" and ***in the 9 months after December 20, 1991***. 47 U.S.C. §§ 227(c)(1) and (2). Those regulations were implemented in ***1992***, as authorized, and also do not refer to text messages. *See* 47 C.F.R. § 64.1200(c). Thus, any DNC regulations enacted thereafter exceeded the FCC's limited rule making authority under 227(c).

Regardless, the FCC's prior interpretations are not entitled to deference today, under recent binding precedent. *See McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp.,* 606 U.S. 146, 152 (2025) (holding "the Hobbs Act does not preclude district courts in enforcement proceedings from independently assessing

---

[7] This is a key distinction, as "Section 227(b)(1)(A)" of the TCPA—which is the provision the FCC considered in its 2003 Order and does not cover DNC claims— "deals with 'a broader prohibition on 'any call'" and not "the statutory term 'telephone call' at issue here" with Section 227(c). *Davis,* 797 F. Supp. 3d at 1273. *See also James,* 2026 WL 879244, at *3-5 (discussing differences between sections).

whether an agency's interpretation of the relevant statute is correct"); *Loper*, 603 U.S. at 401 (overruling *Chevron* deference, finding "*Chevron* gravely erred [ ] in concluding that the inquiry is fundamentally different just because an administrative interpretation is in play"). This is true even though § 227(c) affords some limited rulemaking authority to the FCC. *See Radvansky,* 2026 WL 456919 at *4 (noting "this delegation did not authorize the FCC to determine that 'telephone call' includes text message") (citing *McGonigle*, 2026 WL 111338, at *2); *Stockdale*, 2026 WL 591842, at *2 (ruling similarly); Ex. A at p. 3 (same). Rather, *McLauglin* merely "calls for 'appropriate respect,' [to prior agency decisions] not 'appropriate deference.' [] And the concepts are different. One can provide 'appropriate respect' to an agency's view without adopting a statutory interpretation that conflicts with the ordinary public meaning of clear statutory text. Thus, even assuming the FCC['s] [2003] Order clearly defined 'telephone calls' as that term is used in § 227(c)(5)"—and it does not—"'appropriate respect' for that conclusion would not require a different outcome here." *Davis*, 797 F. Supp. 3d at 1275 (quoting *McLaughlin*, 606 U.S. at 168).

In sum, after *Loper*, *McKesson*, and *Facebook*, the law is clear that courts need not blindly defer to the FCC's prior rulings. Instead, this Court must independently interpret and apply the relevant TCPA provision here as written by Congress when it was enacted as "if no agency were involved." *Loper*, 603 U.S. at 401. And the Court must do so by applying ordinary statutory construction principles, without the

influence of modern-day definitions and unconstrained by prior FCC interpretations. *See, e.g., Radvansky, McGonigle*, and *Stockdale, supra*; *see also* Ex. A. at pp. 3, 8.

Thus, because text messages alone cannot support a Section 227(c) claim, and Plaintiff expressly does not base her claim on voice calls, her claim fails as a matter of law and this her entire FAC should be dismissed <u>with prejudice</u>. *See Davis*, *supra*.[8]

### B. The FAC Should Also Be Dismissed Under Rule 12(b)(6) Because It Fails to Plead Sufficiently a Direct or Vicarious TCPA Liability.

Plaintiff also fails to plausibly allege a theory of liability under the TCPA against Streamline, which further warrants a complete dismissal here.

Again, it is well-settled there are "two potential theories of liability under the TCPA" that must be adequately pled in <u>all</u> cases in accordance with federal pleadings standards to avoid a dismissal under Rule 12(b)(6): "(1) direct liability; and (2) vicarious liability." *Rogers v. Postmates Inc.*, 2020 WL 3869191, at *3 (N.D. Cal. July 9, 2020) (citation omitted). As such, "[f]or a person to 'make' [or 'initiate'] a call under the TCPA, the person must either (1) directly make the call, or (2) have [a common law] agency relationship with the person who made the call." *Pascal v. Agentra, LLC,* 2019 WL 5212961, at *2 (N.D. Cal. Oct. 16, 2019) (quoting *Abante Rooter & Plumbing v. Farmers Grp., Inc.*, 2018 WL 288055, at *4 (N.D. Cal. Jan. 4,

---

[8] Dismissal with prejudice is also appropriate where (as here) a plaintiff already has had a chance to amend but failed to cure the fatal pleading defects in her original complaint when amending. *See, e.g., Rance v. Rocksolid Granit USA, Inc.,* 2010 WL 11601453, at *6 (S.D. Fla. Sept. 2, 2010); *Carvel v. Godley,* 404 F.App'x 359, 361 (11th Cir. 2010). Such is true here with respect to the dispositive grounds below.

2018)). Courts in the Eleventh Circuit have firmly adopted this rule. *See, e.g., Tuso*, 2024 WL 1239474, at \*4; *Belleville*, 2024 WL 2342337, at \*4; *Carson*, 2022 WL 2954327, at \*5 (each collecting cases and dismissing on these grounds). Failure to plausibly allege either theory warrants dismissal of <u>any</u> TCPA claim in its <u>entirety</u> under Rule 12(b)(6), regardless of whether there were facts pled supporting other elements. *See Tuso, supra.* Here, Plaintiff failed to sufficiently allege either theory.

As to the former, federal district courts have uniformly recognized that direct liability under the TCPA applies <u>only</u> to persons or entities that "initiate" or "make" telemarketing calls, which in this context means to "***physically*** place" a call or send a text directly to the plaintiff. *See, e.g., Sheski*, 2020 WL 2474421, at \*2 (N.D. Cal. May 13, 2020) (dismissing TCPA claim where the allegations did not "lead to the inference that [defendant] sent or was directly involved in [physically] sending the text messages at issue") (emphasis added) (citing *In re Joint Petition filed by Dish Network, LLC*, 2013 WL 1934349, 28 FCC Rcd. 6574, 6583 ¶ 26 (2013)). *Accord Tuso* and *Belleville, supra. See also Melito v. Am. Eagle Outfitters, Inc.,* 2015 WL 7736547, at \*4 (S.D.N.Y. Nov. 30, 2015) (dismissing TCPA claim where "none of [the plaintiff's] factual allegations" in the complaint at bar, "even if accepted as true, establish[ed] direct liability on [the defendant's] part under the TCPA because, put simply, none of those actions involves the making, or physical placement," of a call); *Metzler v. Pure Energy USA LLC*, 2023 WL 1779631, at \*6 (S.D.N.Y. Feb. 6, 2023)

14

(dismissing TCPA complaint on this basis, holding that all TCPA plaintiffs must "allege facts from which the Court can plausibly infer that [d]efendant has direct liability, even if it is also plausible that a third party made the call"); *Brownlee v. Allstate Ins. Co.,* 2021 WL 4306160, at *1–2 (N.D. Ill. Sept. 22, 2021) (dismissing and holding "[a]t the very minimum, plaintiff must allege in her complaint that defendant made each call that she seeks to hold it [directly] liable for.").[9]

Conversely, TCPA defendants "cannot be directly liable for calls made by third parties." *Hossfeld v. Am. Fin. Sec. Life Ins. Co.,* 544 F. Supp. 3d 1323, 1331–32 (S.D. Fla. 2021) (dismissing in part on this basis). Likewise, "[m]erely offering a good or service for sale does not mean that a retailer initiates the marketing calls for that product" for direct TCPA liability purposes, either. *Wick v. Twilio Inc.,* 2017 WL 2964855, at *3 (W.D. Wash. July 12, 2017). *See also Bennett v. Celtic Ins. Co.,* 2022 WL 865837, at *3 (N.D. Ill. Mar. 23, 2022) (ruling similarly and dismissing on this basis); *Rogers v. Interstate Nat'l Dealer Servs. Inc.*, 2020 WL 4582689, at *3 (N.D. Ohio Aug. 10, 2020) (calls "on behalf" of a defendant not subject to direct liability).

To meet bedrock federal pleading standards on this front, however, "[m]erely

---

[9] While various provisions of the TCPA use the terms "make" or "initiate" somewhat interchangeably, courts evaluating and ultimately dismissing conclusory direct TCPA liability claims, like Plaintiff's here, have uniformly held that "make" or "initiate" in this context means to "physically" place calls or send text messages (when actionable) directly to the named plaintiff. *See also Aaronson v. CHW Grp., Inc.,* 2019 WL 8953349, at *2 (E.D. Va. Apr. 15, 2019); *Smith v. Direct Building Supplies, LLC,* 2021 WL 4623275, at *3 (E.D. Pa. Oct. 7, 2021); *Barnes v. SunPower Corp.,* 2023 WL 2592371, at *3 (N.D. Cal. Mar. 16, 2023); *Cunningham v. Daybreak Solar Power, LLC*, 2023 WL 3985245, at *2 (N.D. Tex. June 13, 2023) (each dismissing).

alleging that [a defendant or an agent] 'made' or 'initiated' [a] call" without more, as Plaintiff does here, "is not sufficient to allege a TCPA [liability] claim." *Frank v. Cannabis & Glass, LLC,* 2019 WL 4855378, at *2 (E.D. Wash. Oct. 1, 2019).

Countless other courts in and beyond this Circuit have ruled similarly. *See, e.g., Tuso,* 2024 WL 1239474, at *4 (dismissing where plaintiff's "conclusory statement" as to direct liability was insufficient); *Belleville,* 2024 WL 2342337, at *4 (ruling similarly); *Rogers v. Assurance IQ, LLC*, 2023 WL 2646468, at *5 (W.D. Wash. Mar. 27, 2023) (dismissing on this basis where plaintiffs concluded one defendant "physically" placed the calls, noting "[p]laintiffs have not pleaded any *facts* supporting their inference that [defendant] physically dialed the calls to four of the individual plaintiffs" (emphasis in original)); *Wilson v. MEDVIDI Inc.*, 2025 WL 2856295, at *4 (N.D. Cal. Oct. 7, 2025) (dismissing: "Despite Plaintiff's conclusory allegation that the text messages were sent by Defendant, the complaint provides no factual details plausibly suggesting that Defendant actually sent them. There is no discussion, for example, of any investigation Plaintiff conducted to form the understanding that Defendant operated the separate phone numbers from which these messages were sent."). In short, "[a]s a party to these calls, Plaintiff 'should be able [and indeed is ***legally required***] to provide greater detail" to plausibly allege a TCPA liability theory under Rule 12(b)(6). *Matthews,* 2025 WL 1181789, at *3 (quoting *Scruggs v. CHW Grp., Inc.,* 2020 WL 9348208, at *6 (E.D. Va. Nov. 12, 2020)).

Applying the foregoing firmly rooted legal principles here shows Plaintiff has not plausibly alleged a direct TCPA liability theory against Streamline. For example, in her <u>original</u> complaint, Plaintiff vaguely averred that the subject communications were initiated by "Defendant and/or its affiliates, agents, and/or other persons or entities acting on Defendant's behalf." *See, e.g.,* Dkt. 1, ¶¶ 72, 74, 75. *See also id.* ¶ 43 (class allegations referring to communications "from Defendant or a third party acting on Defendant's behalf"). In other words, Plaintiff concluded that ***either Streamline and/or countless unidentified third parties called or texted her***.

While Plaintiff's FAC omitted or altered some (but not all) of the third party allegations after Streamline pointed them out in Streamline's initial dispositive motion (*see* Dkt. 10-1 at 2, 18), and now contradictorily suggests that only "Fundible" was involved (*see, e.g.,* Dkt. 12, ¶¶ 38, 42), courts in this Circuit and elsewhere have recognized that where "discrepancies exist between successive drafts of complaints" the court may consider this when ruling on a Rule 12(b)(6) motion as to an amended pleading and "has discretion to strike new or changed allegations as 'false and sham.'" *Pelfrey v. Mahaffy*, 2018 WL 3110794, at *5 (S.D. Fla. Feb. 2, 2018). In other words, where "a 'plaintiff blatantly changes his statement of the facts in order to respond to the defendant['s] motion to dismiss [and] directly contradicts the facts set forth in his original complaint,' a court is authorized 'to accept the facts described in the original complaint as true" and disregard the new allegations. *Id.* (quoting *Wallace v. New*

17

*York City Dep't of Corr.,* 1996 WL 586797, at *2 (E.D.N.Y. Oct. 9, 1996)).[10] This Court should rule similarly, and disregard Plaintiff's "sham" allegations on their face.

Even if the Court takes her sham allegations as true, they do not help Plaintiff avoid a dismissal. Indeed, even after amending, Plaintiff's FAC remains more notable for the facts it does <u>not</u> contain on this front. For example, Plaintiff still does <u>not</u> allege, *inter alia*, that: (i) she called or texted any of the numbers allegedly used to call her back and reached Streamline directly; (ii) any caller identified themselves as a Streamline "employee"; or (iii) her Caller ID identified "Streamline" (or "Fundible") as the caller—all of which could support an inference of direct liability in <u>some</u> cases, if properly pled, as other courts have held. *See, e.g., Matthews,* 2025 WL 1181789, at *3; *Wilson,* 2025 WL 2856295, at *4; *Aaronson*, 2019 WL 8953349, at *2-3; *Rogers*, 2023 WL 2646468, at *5; *Doyle v. GoHealth, LLC*, 2023 WL 3984951, at *4–6 (D.N.J. Mar. 30, 2023); *Smith*, 2021 WL 4623275, at *3-4; *Bank v. Vivint Solar, Inc.*, 2019 WL 2280731, at *2 (E.D.N.Y. Feb. 25, 2019), *report and rec. adopted*, 2019 WL 1306064 (Mar. 22, 2019) (each dismissing). The continued omission of such easily pled facts is fatal to Plaintiff's FAC on direct TCPA liability grounds.

That Plaintiff's FAC now baldly concludes the "calls originated from telephone numbers used by Defendant in connection with its Fundible business" (Dkt. 12, ¶ 42)

---

[10] *See also Rubinstein v. Keshet Inter Vivos Trust*, 2018 WL 8899230, at *5 (S.D. Fla. Oct. 17, 2018) (ruling similarly); *Forney v. Hair Club for Men Ltd., Inc.*, 2017 WL 4685549, at *2 (C.D. Cal. June 26, 2017) (applying "sham pleading" rule in TCPA case, and dismissing with prejudice where new allegations were contradictory).

does not move the needle on her direct liability claim from "possible" to "plausible," such that it now passes muster under *Iqbal*/*Twombly*, either. *See, e.g., Metzler*, 2023 WL 1779631, at *2 (dismissing complaint on direct liability grounds with similarly conclusory allegations that the subject number was "owned and/or operated by or on behalf of Defendant"); *Aaronson*, 2019 WL 8953349, at *2 (ruling similarly).

Plaintiff ultimately resorts back to the same flawed approach she took with her original complaint and suggests that the subject communications originated either "from Defendant or a third party acting on Defendant's behalf." Dkt. 12, ¶ 56; *see also id.* ¶ 44 (referring to "Defendant's agents"). However, courts have found such equivocating allegations are "woefully insufficient to state a claim of ***any sort***." *Maldonado-Rodriguez v. Citibank, N.A.*, 2013 WL 350814, at *5 (N.D. Ind. Jan. 28, 2013) (emphasis added). Such is particularly true when it comes to pleading TCPA claims, as courts have squarely rejected such an equivocating "either/or" approach to pleading TCPA liability theories. *See, e.g., Belleville*, 2024 WL 2342337, at *1-4 (dismissing, even though one caller said they were calling "from" the defendant and provided its website, where plaintiff merely alleged "in conclusory fashion that Defendant was directly involved in making" the subject calls); *Doyle*, 2023 WL 3984951, at *4–6 (D.N.J. Mar. 30, 2023) (allegations calls were "from Defendant, its employees and/or agents" were insufficient for directly liability, standing alone); *Barnes,* 2023 WL 2592371, at *1-3 (dismissing on this basis, even though one

19

plaintiff spoke to someone "who identified herself as working for" defendant, and the other received a "call back number" for defendant by the caller); *Dobronski v. Russo*, 2024 WL 4363118, at \*5 (E.D. Mich. Sept. 30, 2024) (dismissing on this basis and holding that a plaintiff "simply alleg[ing] that 'Defendants or Defendants' agent' initiated calls" was insufficient to plead any TCPA liability theory without more).

That some of the callers indicated they were "with" or calling "from" "Fundible" (Dkt. 12, ¶¶ 30, 33, 36, 38, 43) is also of no moment here. In fact, courts have widely recognized that even a call or text allegedly offering the defendant's products, identifying the defendant by name, and/or originating "from" someone associated "with" the defendant in some fashion does <u>not</u>, standing alone, allow for a plausible inference that the defendant itself (and not a third party) physically made or initiated any call for direct liability purposes. *See, e.g.*, *Belleville*, 2024 WL 2342337, at \*1-4 (dismissing on this basis, even though one caller allegedly said they were calling "from" the defendant and provided the defendant's website); *Scruggs*, 2020 WL 9348208, at \*6-10 (dismissing on this basis, calls from someone who stated they were "associated with" the defendant deemed insufficient, without more); *Murray v. Choice Energy, LLC*, 2015 WL 4204398, at \*2 (S.D. Ohio July 10, 2015) (dismissing on this basis, even though plaintiff was "informed that the call was from Choice Energy," where there were "no factual allegations … that Choice Energy had any active role or involvement in [physically] placing the calls"). Together, these

20

authorities (among others) show the alleged content of the subject communications alone is not dispositive of this issue, and that more factual enhancement is necessary.

Lastly, the well-accepted touchstone of a common law agency relationship in the TCPA context, as is required for vicarious TCPA liability, are plausible factual allegations suggesting that the defendant had specific "control" over the literal "manner and means" of any third-party caller's telemarketing campaign, as opposed to control over an agent generally. *See, e.g., Meeks*, 2018 WL 1524067, at *6; *Cunningham*, 2023 WL 3985245, at *2; *Rogers*, 2023 WL 2646468, at *6 (same); *Bank*, 2019 WL 2280731, at *2. Given the absence of such facts, Plaintiff's FAC must also be dismissed on vicarious TCPA liability grounds. *See, e.g., Abramson v. 1 Glob. Capital, LLC*, 2015 WL 12564318, at *3 (S.D. Fla. Sept. 23, 2015) (dismissing where vicarious liability allegations where merely "conclusory in nature" and unsupported).

## C. Plaintiff's TCPA Claim in Count I Should Also Be Dismissed As Plaintiff Fails to Plead Facts Supporting Other Key Elements.

Plaintiff's TCPA claim in Count I is also ripe for dismissal because Plaintiff fails to plead sufficient facts supporting other essential elements of a DNC claim.

**First**, Section 227(c) of the TCPA, on its face, "relates solely to telemarketing and solicitation calls" as opposed to all supposedly "unwanted" calls. *Warnick v. Dish Network LLC,* 301 F.R.D. 551, 558 fn. 3 (D. Colo. 2014). Thus, to avoid dismissal here, Plaintiff must also properly plead facts suggesting her receipt of a "telephone solicitation" as defined by the implementing DNC regulations. *See* 47 C.F.R. §

21

64.1200(f)(15). To meet federal pleading standards in this regard, though, "[c]all recipients must do more than" baldly conclude "the calls in question were telephone solicitations" to adequately plead this essential element. *Weingrad v. Top Healthcare Options Ins. Agency Co.,* 2024 WL 4228149, at *4 (E.D. Pa. Sept. 17, 2024). Courts have, therefore, consistently dismissed DNC claims at the pleadings stage where the plaintiff merely parrots the statute and relies on conclusory labels like "advertisement" or "solicitation" but omits additional requisite factual enhancement. *See, e.g., Eggleston v. Reward Zone USA LLC,* 2022 WL 886094, at *7 (C.D. Cal. Jan. 28, 2022); *Bell v. Hawx Servs., LLC*, 2025 WL 2533371, at *3-4 (E.D. Cal. Sept. 3, 2025) (collecting cases); *Gillam v. Reliance First Capital, LLC,* 2023 WL 2163775, at *3-4 (E.D.N.Y. Feb. 22, 2023); *Dahdah v. Rocket Mortgage LLC*, 2023 WL 5941730, at *3 (E.D. Mich. Sept. 12, 2023), *vacated on other grounds by* 2023 WL 11944898, at *1 (Nov. 17, 2023); *Weingrad*, 2024 WL 4228149, at *4. So should this Court.

In this case, Plaintiff admits she is "not pursuing the voice calls" alleged in her FAC "as a TCPA violation." Dkt. 12, ¶ 38. Even if she was, however, there are no plausible allegations, beyond her conclusory labels, about the content of any telephone calls from which this Court could reasonably infer that they meet the statutory definition above. *See, e.g., id.*, ¶¶ 29, 31, 33, 35, 39, 44-47. *See also Gillam,* 2023 WL 2163775, at *3 (dismissing where plaintiff "merely conclude[d], without any factual support, that [defendant's] agent 'solicit[ed] refinancing products'"). Indeed, the only

"specific" content of any telephone call provided relates to a <u>single</u> voicemail. Dkt 12, ¶ 36. Even if *arguendo* Plaintiff's conclusory allegations in that regard were enough to demonstrate that this one call qualified as a "telephone solicitation" as defined by the TCPA (and they are not), the DNC rules require ***more than one*** violative telephone call in a 12-month period. *See* 47 U.S.C. § 227(c)(5); 47 C.F.R. § 64.1200(c)(2). Only one such call will not support a claim. *See, e.g., Gillam,* 2023 WL 2163775, at *3.

Moreover, Plaintiff still admits that all the subject communications (calls and texts) were "meant" for "someone other than" Plaintiff named "Tyler," and were sent in response to an inquiry by that person, and thus that ***she*** was not being solicited. Dkt. 12, ¶¶ 24, 29, 30, 32, 36, 43. Despite her new conclusions to the contrary (which are not facts), these communications were <u>not</u> "telephone solicitations" fitting the TCPA's statutory definition on their face. *See, e.g., Dahdah*, 2023 WL 5941730, at *3 (dismissing on this basis where, like here, the subject communications were "looking to speak with someone other than" the plaintiff); *Horton v. Molina Healthcare of Texas, Inc.,* 2026 WL 490216, at *9 (N.D. Tex. Feb. 6, 2026), *report and rec. adopted* 2026 WL 488753 (Feb. 20, 2026) (dismissing on this basis because "[t]here [was] no allegation that these calls requested [plaintiff] to purchase anything at all"); *Less v. Quest Diagnostics Inc.,* 2021 WL 266548, at *1–2 (N.D. Ohio Jan. 26, 2021) ("[M]erely providing information about an available service are not implicated by the [TCPA]."). Consequently, Count I fails on these additional grounds.

**Second**, the TCPA's implementing regulations expressly prohibit initiating telephone solicitations to a "residential telephone subscriber *who has registered his or her telephone number*" on the National DNC Registry. 47 C.F.R. § 64.1200(c)(2) (emphasis added). As other courts have found, a plain reading of the unambiguous language of this regulation requires Plaintiff here to plausibly allege that she registered *her own* phone numbers on which she allegedly received the subject calls on the National DNC Registry to avoid a dismissal on this basis. *See, e.g., Rogers,* 2023 WL 2646468, at *4 (dismissing DNC claim in part for this reason); *Rombough v. Robert D. Smith Ins. Agency, Inc.,* 2022 WL 2713278, at *2-4 (N.D. Iowa June 9, 2022) (thoroughly analyzing this issue, dismissing DNC claim *with prejudice* on this basis). That plain reading of this regulation harmonizes it with the statutory language in which Congress authorized the creation of a registry of "*residential subscribers who object to receiving telephone solicitations*." 47 U.S.C. § 227(c)(3) (emphasis added).

In this instance, even after amending, Plaintiff still does not indicate *who* registered the phone number upon which she received the at-issue communications, only that it "has been registered" on the Registry for over 20 years. *See* Dkt. 12, ¶ 28. This inartful pleading suggests that Plaintiff's "numbers could have been registered by previous owners of th[e] numbers rather than by Plaintiff[.]" *Rogers*, 2023 WL 2646468, at *4. Moreover, dismissal is particularly appropriate in this instance given that "[t]hese are facts that are easily within the knowledge of Plaintiff[] and can be

24

pleaded to remove any doubt about whether [Plaintiff] actually registered [her] own number[] on the DNC list[.]" *Id*. Count I thus fails for this additional reason.

### D.    Plaintiff's State Law Claim in Count II Fails For the Same Reasons.

Because Plaintiff's new Georgia state law DNC claim in Count II shares similar elements as its federal counterpart and likewise lacks sufficient requisite supporting facts, it is also deficient and should be dismissed for the same reasons above. *See, e.g., Cunningham v. Politi*, 2019 WL 2519702, at *7 (E.D. Tex. Apr. 26, 2019), *report and rec. adopted,* 2019 WL 2526536 (June 19, 2019) ("Because Plaintiff's underlying (federal) TCPA claims fail, Plaintiff's state TCPA claim … also fails."). This Court also may (and indeed should) decline to exercise supplemental jurisdiction over Plaintiff's state law claim in Count II, after dismissing her TCPA claim in Count I, under 28 U.S.C. § 1367(c). *See, e.g., Cunningham v. Radius Glob. Sols., LLC*, 2021 WL 2258743, at *3 (E.D. Tex. June 3, 2021) (so ruling in TCPA case); *Snow v. Gen. Elec. Co.*, 2019 WL 2500407, at *7 (E.D.N.C. June 14, 2019) (same).[11]

## IV.    CONCLUSION

For these reasons, the Court should dismiss the entire FAC <u>with prejudice.</u>

---

[11] Also, a plaintiff generally may not receive a "double recovery under different legal theories for the same injury." *Gordon v. Pete's Auto Serv. of Denbigh, Inc.,* 637 F.3d 454, 460 (4th Cir. 2011). *See also EEOC v. Waffle House, Inc.,* 534 U.S. 279, 297 (2002) ("[I]t goes without saying that the courts can **and should preclude** double recovery by an individual.") (emphasis added). Allowing Plaintiff to recover under the TCPA DNC rule and its Georgia equivalent here would be such an impermissible double recovery. Count II should, therefore, be dismissed for this additional reason. *See also Yor-Wic Constr. Co. v. Eng'g Design Techs., Inc.,* 2019 WL 1412943, at *4 (W.D. La. Mar. 28, 2019) ("A claim can be dismissed as duplicative under Rule 12(b)(6) when it seeks identical damages as another claim asserted in the complaint.").

Dated: April 22, 2026   Respectfully submitted,

By: /s/ Stephen D. Libowsky

**MANATT, PHELPS & PHILLIPS, LLP**

Stephen D. Libowsky (GA Bar No. 451965)
151 N. Franklin Street, Suite 2600
Chicago, Illinois 60606
Tel: (312) 529-6300
Email: slibowsky@manatt.com

*Counsel for Defendant*

26

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(D), the undersigned hereby certifies that this document has been prepared in accordance with Local Rule 5.1(C).

Dated: April 22, 2026                    Respectfully submitted,

                                         */s/ Stephen D. Libowsky*

                                         Stephen D. Libowsky


## CERTIFICATE OF SERVICE

I hereby certify that I filed the foregoing document electronically on the Court's CM/ECF docket which served same electronically upon all counsel of record.


Dated: April 22, 2026                    Respectfully submitted,

                                         */s/ Stephen D. Libowsky*

                                         Stephen D. Libowsky


27