IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

| | | |
|---|---|---|
| JOE IRVIN, *on behalf of himself and others similarly situated*<br><br>    Plaintiff,<br><br>v.<br><br>SONIC INDUSTRIES SERVICES, LLC,<br><br>    Defendant. | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION NO.<br>3:25-cv-00242-LMM |

## **ORDER**

This case comes before the Court on Defendant's motion to dismiss, Dkt. No. [12], and Defendant's motion to dismiss Plaintiff's First Amended Complaint, Dkt. No. [16]. After due consideration, the Court enters the following Order.

## I.    BACKGROUND

This action arises from telemarketing text messages Defendant Sonic Industries Services, LLC sent to Plaintiff Joe Irvin. Dkt. No. [1]. Plaintiff owns a telephone number he uses for personal purposes. Id. ¶¶ 17, 19. Plaintiff registered this phone number on the national Do Not Call ("DNC") registry in February of 2025. Id. ¶ 20. Nevertheless, Plaintiff has received at least twelve text messages from Defendant between August and October of 2025. Id. ¶ 22. The messages included Defendant's name, branding, and hyperlinks to Defendant's website. Id. ¶¶ 24–25. Plaintiff brings this putative class action, alleging that Defendant



EXHIBIT A

violated the Telephone Consumer Protection Act ("TCPA") by sending him text messages after he registered with the national DNC registry. Id. ¶¶ 43–44. Defendant now moves to dismiss Plaintiff's First Amended Complaint. Dkt. No. [16].

## II.   LEGAL STANDARD

Under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). While this pleading standard does not require "detailed factual allegations," the Supreme Court has held that "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007)).

To withstand a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Id. (quoting Twombly, 550 U.S. at 570). A complaint is plausible on its face when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. Id. (citing Twombly, 550 U.S. at 556).

At the motion-to-dismiss stage, "'all well-pleaded facts are accepted as true, and the reasonable inferences therefrom are construed in the light most favorable to the plaintiff.'" FindWhat Inv. Grp. v. FindWhat.com, 658 F.3d 1282, 1296 (11th Cir. 2011) (quoting Garfield v. NDC Health Corp., 466 F.3d 1255, 1261

(11th Cir. 2006)). However, this principle does not apply to legal conclusions set forth in the complaint. Iqbal, 556 U.S. at 678. Nor will the Court "accept as true a legal conclusion couched as a factual allegation." Twombly, 550 U.S. at 555.

## III. DISCUSSION

Defendant moves to dismiss Plaintiff's First Amended Complaint, arguing that Plaintiff's sole claim fails for two reasons. Dkt. No. [16-1]. First, Defendant argues that Plaintiff cannot bring suit under 47 U.S.C. § 227(c)(5) because that Section applies only to phone calls and not text messages. Id. at 7. Second, Defendant argues that, even if this Court were to conclude that Section 227(c) applies to text messages, Plaintiff still fails to plead a viable theory of TCPA liability. Id. at 14. Plaintiff opposes each of these arguments. Dkt. No. [17]. However, as explained below, the Court agrees with Defendant that Section 227(c)(5) does not apply to text messages.

As an initial matter, the Court notes that the Supreme Court's decision in McLaughlin Chiropractic Assocs., Inc. v. McKesson Corp., 606 U.S. 146 (2025), is informative in interpreting the TCPA. In McLaughlin, the Supreme Court held that the Hobbs Act does not preclude district courts from disagreeing with the FCC's interpretations of the TCPA. 606 U.S. at 162. Thus, in light of McLaughlin, this Court must independently—and without deference to the FCC's interpretation—evaluate Defendant's argument that the term "telephone call" excludes text messages.

3

The Court begins its analysis with the "plain language of the provision to be interpreted." Pugliese v. Pukka Dev., Inc., 550 F.3d 1299, 1303 (11th Cir. 2008) (citation modified). If the Court finds the text to be clear, the analysis ends there too. See Young v. Grand Canyon Univ., Inc., 980 F.3d 814, 819 (11th Cir. 2020). Here, Section 227(c)(5) creates a private right of action for persons who "received more than one telephone call" in violation of the TCPA. 47 U.S.C. § 227(c)(5). As the only other district courts in the Eleventh Circuit to substantively address this question have noted, "the statutory text here is clear, and a text message is not a 'telephone call.'" See Davis v. CVS Pharmacy, Inc., 797 F. Supp. 3d 1270, 1273 (N.D. Fla. 2025) (citation modified); Sayed v. Naturopathica Holistic Health, Inc., No. 8:25-CV-00847-SDM-CPT, 2025 WL 2997759, at *2 (M.D. Fla. Oct. 24, 2025) (quoting id.). Plaintiff argues against this conclusion for two reasons, which the Court will address in turn.

### 1. Definition of "Calls" Under § 227(c)(5)

First, Plaintiff cites a broad swath of pre-McLaughlin authority to assert that "nearly every court to consider the question" has held that text messages are "calls" under Section 227(c)(5).[1] Dkt. No. [17] at 5. The authority Plaintiff cites does not support this assertion, either because the courts in those cases: (1) had no occasion to decide the issue; or (2) merely deferred to the FCC's position that

---

[1] Plaintiff seemingly excludes from his measure of "nearly every court" the recent decisions in this Circuit holding to the contrary. See Davis, 797 F. Supp. 3d at 1273 (holding that the phrase "telephone call" in Section 227(c)(5) does not encompass text messages); Sayed, 2025 WL 2997759, at *2 (holding the same).

4

the TCPA covers text messages—an approach subsequently rejected by the Supreme Court in McLaughlin. 606 U.S. at 168.

In the first category, Plaintiff cites cases wherein the issue of whether a text constitutes a "call" was not decided. Dkt. No. [17] at 5–6. For example, Plaintiff cites Campbell-Ewald Co. v. Gomez, 577 U.S. 153 (2016), for the proposition that a text message is included in the contemporary definition of the word "call." Id. But, as courts have previously noted, in that case the Supreme Court "assumed, but did not decide," that a text message falls into a broader prohibition of "any call" under Section 227(b) because the issue was not disputed. See Davis, 797 F. Supp. 3d at 1273; Campbell-Ewald, 577 U.S. at 156.[2] Similarly, Plaintiff relies on various circuit court decisions holding that unsolicited text messages constitute sufficient injury to confer Article III standing. Dkt. No. [17] at 5 (citing Drazen v. Pinto, 74 F.4th 1336, 1346 (11th Cir. 2023)); Hall v. Smosh Dot Com, Inc., 72 F.4th 983, 986 (9th Cir. 2023); Gadelhak v. AT&T Servs., Inc., 950 F.3d 458, 463 (7th Cir. 2020). However, in none of these decisions did the courts "interpret the statute at all[.]" Davis, 797 F. Supp. 3d at 1273.

---

[2] Plaintiff later cites Barton v. Temescal Wellness, LLC, 525 F. Supp. 3d 195, 198–99 (D. Mass.), adhered to on denial of reconsideration, 541 F. Supp. 3d 138 (D. Mass. 2021), as support for reading the Campbell-Ewald Court's "assumption" that the TCPA applied to texts as black-letter law, rather than dicta. Dkt. No. [17] at 6. However, this reading is belied by the Court's later reference to Campbell-Ewald in Facebook, Inc. v. Duguid, where the Court again noted that neither party disputed whether the TCPA applied to texts, and therefore "assume[d] that it [did] without considering or resolving that issue." 592 U.S. 395, 400 n.2 (2021).

In the second category, Plaintiff cites various authorities that rely on the FCC's interpretation of the TCPA as applying to text messages. Dkt. No. [17] at 6–7. Each was decided before the Supreme Court's decision in <u>McLaughlin</u>, and moreover, each deferred to the same 2003 FCC Order relating to Section 227(b) of the TCPA.[3] <u>See</u> <u>Ins. Mktg. Coal. Ltd. v. Fed. Commc'ns Comm'n</u>, 127 F.4th 303, 307 n.2 (11th Cir. 2025) ("We note that even though the statute on its face does not mention text messages, the FCC—by regulation—has interpreted the word 'call' to include text messages."); <u>see also</u> <u>Barton v. Temescal Wellness, LLC</u>, 525 F. Supp. 3d 195, 199 (D. Mass.), <u>adhered to on denial of reconsideration</u>, 541 F. Supp. 3d 138 (D. Mass. 2021) (construing <u>Barr v. Am. Ass'n of Pol. Consultants, Inc.</u>, 591 U.S. 610 (2020), as endorsing the FCC's 2003 Order as the "current applicable legal standard").[4] Thus, each of Plaintiff's cited authorities demonstrates deference to agency interpretation that the Supreme Court in <u>McLaughlin</u> expressly rejected after its decision in <u>Loper Bright Enters. v.</u>

---

[3] <u>See</u> <u>In re Rules & Reguls. Implementing the Tel. Consumer Prot. Act of 1991</u>, 18 F.C.C. Rcd. 14014 (2003). In contrast, Plaintiff attempts to bring this putative class action under the TCPA's private right of action provision, 47 U.S.C. § 227(c)(5).

[4] It is worth noting that Justice Kavanaugh—who authored the Court's opinion in <u>Barr</u>—also authored the Court's opinion in <u>McLaughlin</u>. There, the Court expressly rejected the deference to agency interpretations exhibited earlier in <u>Barr</u> based on a 2003 FCC Order interpreting Section 227(b)'s prohibition on robocalls to encompass text messages. <u>See</u> <u>Barr</u>, 591 U.S. at 615 n.1; <u>see also</u> <u>McLaughlin</u>, 606 U.S. at 168. Thus, the <u>Barton</u> court's description of the 2003 FCC Order relied upon in <u>Barr</u> was accurate at that time, but no longer in light of <u>McLaughlin</u>.

6

Raimondo, 603 U.S. 369 (2024). See McLaughlin, 606 U.S. at 155 ("District courts are not bound by the agency's interpretation, but instead must determine the meaning of the law under ordinary principles of statutory interpretation, affording appropriate respect to the agency's interpretation.").

The Court therefore rejects Plaintiff's reliance on pre-McLaughlin precedent to contend that the plain meaning of "telephone call" in Section 227(c)(5) includes text messages.

### 2. *FCC's Authority to Prohibit Text Messages Under § 227(c)*

Plaintiff next contends through a host of arguments that the TCPA clearly delegates authority to the FCC to regulate and prohibit text messages through Section 227(c)'s DNC provisions. Dkt. No. [17] at 7–20. The Court addresses each in turn below.

First, Plaintiff argues that the "ordinary, contemporary, common meaning" of the word "call" in the context of the TCPA is "to communicate with or try to get into communication with a person by telephone." Id. (quoting Satterfield v. Simon & Schuster, Inc., 569 F.3d 946, 953–54 & n.3 (9th Cir. 2009)). This argument runs afoul of the Supreme Court's instruction in Loper Bright that a statute's meaning is "fixed at the time of enactment." 603 U.S. at 400. And, as Defendant rightfully points out, various courts in this Circuit and others have concluded that, because text messaging was not an available technology in 1991 when the TCPA was enacted, the phrase "telephone call" would not have included

text messages. Dkt. No. [16-1] at 8 (citing <u>Jones v. Blackstone Med. Servs., LLC</u>, 792 F. Supp. 3d 894, 899 (C.D. Ill. 2025); <u>Davis</u>, 797 F. Supp. 3d at 1273; <u>Sayed</u>, 2025 WL 2997759, at *2). In response, Plaintiff cites <u>New Prime Inc. v. Oliveira</u>, 586 U.S. 105, 114 (2019), as support for the proposition that "modern intuition doesn't always match evidence of a term's meaning at the time of [a statute's] enactment." Dkt. No. [17] at 14 (citation modified). But that case only undermines Plaintiff's position. <u>See</u> <u>New Prime Inc.</u>, 586 U.S. at 114 (concluding that the modern definition of "employment" did not align with evidence of the term's meaning at the time of the Federal Arbitration Act's adoption in 1925). Thus, the Court agrees with Defendant and prior decisions in this circuit that the statutory text here is clear: a text message is not a telephone call.

Second, Plaintiff argues that, because Section 227(c)(1) directed the FCC to protect residential telephone subscribers from "telephone solicitations"—defined in Section 227(a)(4) as "the initiation of a telephone call *or message* . . ."—Section 227(c)(5)'s private right of action must necessarily encompass claims for unsolicited text messages. Dkt. No. [17] at 10–11 (emphasis added). But, as each court to hear similar arguments in this Circuit has held, Section 227(a)(4) only undermines this argument, since it shows that Congress "does not use the term 'telephone call' to encompass all 'messages.'"[5] <u>Davis</u>, 797 F. Supp. 3d at 1274.

---

[5] Defendant argues that "message" as used in this subsection presumably referred to any "artificial or prerecorded voice message" delivered via telephone—as provided in Section 227(d)(3). Dkt. No. [20] at 6–7. Unlike the phrase "text

Plaintiff contends that Section 227(c)(5) cannot be "read in isolation." Dkt. No. [17] at 11. But to hold otherwise would be to render Congress's use of the distinct terms "telephone call" and "telephone call or message" superfluous. Radvansky v. 1-800-Flowers.com, Inc., No. 1:25-CV-2811-TWT, 2026 WL 456919, at *3 (N.D. Ga. Feb. 17, 2026) ("[C]onstruing these distinct phrases identically would render superfluous the different terms Congress chose to use in each subsection, a result which would violate the canon against surplusage.").

Third, Plaintiff argues that such a reading of the TCPA would leave consumers no statutory remedy to enforce Section 227(c)'s prohibitions, and that Congress would not have cabined Section 227(c)(5)'s scope "to *exclude* text messages by using a term that elsewhere in the statute *includes* them." Dkt. No. [17] at 12–15. As to the former of Plaintiff's arguments, the Davis court properly recognized that "Congress could reasonably conclude that unwanted telephone calls are more bothersome and intrusive than unwanted text messages, and it could provide broader protections against the former than the latter," and that, "[w]hatever its reasoning, it clearly limited the private right to those receiving

---

message(s)," these "messages" were expressly included in the original TCPA, and were an already-existing technology at the time of the TCPA's enactment. Id. Regardless of the correct meaning of "message," the canon against surplusage counsels against treating "telephone call" and "telephone call *or message*" the same where Congress saw fit to use the two distinct terms. Radvansky, 2026 WL 456919, at *3.

9

'telephone calls.'" 797 F. Supp. 3d at 1274.[6] And as to the latter, "the fact remains that Section 227(c)(5) of the TCPA includes 'telephone call' and does not mention text messages or SMS messages," and nowhere does the statute "define 'telephone call' to include text and/or SMS messages." Jones, 792 F. Supp. 3d at 901. While other jurisdictions may have read the term "call" to include text messages when used elsewhere in the TCPA, Plaintiff cites no post-McLaughlin binding authority supporting his contention that the term "telephone call" does the same when used in Section 227(c)(5). Dkt. No. [17] at 15.

Fourth, Plaintiff argues that, although "mere ambiguity" is no longer automatic cause to defer to agency interpretations after Loper Bright, Section

---

[6] In this vein, Plaintiff further asserts that Section 227(c)(1)(D) renders "immaterial" the recognized distinction between the phrase "telephone call *or message*" in 227(a)(4) and "telephone call" standing alone in 227(c)(5). Dkt. No. [17] at 13 n.2. In Plaintiff's view, by directing the FCC to consider the need for additional restrictions on "telephone solicitations," including "*calls* exempted under" what is now Section 227(a)(4), Congress must have intended the scope of this possible additional regulatory authority to "mirror" the definition of "telephone solicitation" and its exemptions—both of which encompass a "telephone call *or message*"—bringing us neatly back to the conclusion that text messages are covered by Section 227(c)(5). Id. This argument suffers from the same inattention to distinctions in statutory language *as that* present in the plaintiff's argument in Davis, 797 F. Supp. 3d at 1274; just as Congress *could* have chosen to create a private right of action for any person receiving a "telephone call *or message*" in Section 227(c)(5), it similarly *could* have directed the FCC to suggest further regulations on those "calls *or messages*" within the definition of "telephone solicitation" in Section 227(c)(1)(D). It chose to do neither, instead limiting the relevant language to "those *calls* exempted . . . ." 47 U.S.C. § 227(c)(1)(D). And "when a statute uses one term in one place and a distinct term elsewhere," courts should presume that "the difference matters—that is, the distinct words have different meanings." Davis, 797 F. Supp. 3d at 1274.

10

227(c) is an "express delegation of rulemaking discretion to the FCC." Dkt. No. [17] at 16. Specifically, Plaintiff asserts that Congress granted the FCC authority to "fill up the details" of the TCPA's DNC provisions by directing the agency to "develop proposed regulations . . . the Commission determines are most effective and efficient to accomplish the purposes of this section." Id.; 47 U.S.C. § 227(c)(1)(E). Plaintiff next cites an entirely different provision of Title 47 of the U.S. Code as evidence of Congress expressly delegating authority for the FCC to "give meaning to a particular statutory term." Dkt. No. [17] at 17 (citing 47 U.S.C. § 332(a)(1)(A) for the term "common carrier"). The Court observes that no such express delegation to define "telephone call" is evident anywhere in Section 227(c)—the subsection Plaintiff asserts his sole claim under. Moreover, Plaintiff's argument that Section 227(c)(1)(E) instructs the FCC to "fill up the details" of the TCPA's DNC provisions by defining "telephone call" is unavailing. As other courts to hear similar arguments have held, claiming authority to make such a determination under Loper Bright "would likely more than double the number of private causes of action authorized by the TCPA." Radvansky, 2026 WL 456919, at *4 (quoting McGonigle v. Pure Green Franchise Corp., No. 25-61164-CIV, 2026 WL 111338, at *2 (S.D. Fla. Jan. 15, 2026)). That is not merely "filling up the details" of a statutory scheme.[7] Id.

---

[7] Indeed, Plaintiff's arguments fail to find footing in Loper Bright's examples of express delegations of agency discretion to "fill up the details" of a statutory scheme. Loper Bright, 603 U.S. at 395 n.6. Neither of the Court's examples in

Finally, Plaintiff contends that, if Congress expressly delegated to the FCC the authority to "fill up the details" of the TCPA's DNC provisions in Section 227(c)(1)(E), then the proper standard of review is for "arbitrary and capricious" agency action—not *de novo*. Dkt. No. [17] at 18 (quoting Seven Cnty. Infrastructure Coal. v. Eagle Cnty., 605 U.S. 168, 179–80 (2025)). Again, however, the Court disagrees with Plaintiff's characterization of Section 227(c)(1)(E) as granting the FCC discretion to "fill up the details" of the DNC provisions by defining "telephone call." In cases "involving undefined or ambiguous terms . . . ," the relevant inquiry is whether "Congress intended for the [agency] to have the power to interpret and define" such terms; if not, the Court "cannot defer to the agency's interpretation but must resolve the ambiguity independently." Sharma v. Peters, 756 F. Supp. 3d 1271, 1283 (M.D. Ala. 2024) (citing Loper Bright, 603 U.S. at 395). Plaintiff insists that the FCC's clarification that text messages fall under the DNC provisions of the TCPA is "well within the bounds of permissible regulation." Dkt. No. [17] at 20. However, in doing so, Plaintiff advocates for exactly the type of deference to agency interpretation that the Supreme Court rejected in Loper Bright. 603 U.S. at 400 ("It therefore makes

---

Loper Bright nor Section 227(c)(1)(E) contains the type of explicit language necessary to recognize the separate and distinct category of agency discretion to "give meaning to a particular statutory term." See Id. at 395 n.5 (finding such discretion pursuant only to language as specific as "as such terms are defined and delimited by regulations of the Secretary"). The Court finds Plaintiff's attempt to conflate the two types of delegations—by arguing that the FCC may "fill up the details" of Section 227(c) by "giving meaning" to "telephone call"—unpersuasive.

12

no sense to speak of a 'permissible' interpretation that is not the one the court, after applying all relevant interpretive tools, concludes is best."). Thus, the Court declines to give any more respect to the FCC's interpretation of Section 227(c) than required under Loper Bright and McLaughlin.

The Court agrees with Defendant that Plaintiff's claim fails as a matter of law under Rule 12(b)(6) because Section 227(c)(5)'s private right of action is limited to "telephone call[s]," a term the Court finds does not encompass text messages, contrary to the FCC's interpretation in 47 C.F.R. § 64.1200(e). Therefore, the Court does not reach Defendant's separate and independent ground for dismissal—i.e., that Plaintiff fails to plead a viable TCPA liability theory.

## IV.    CONCLUSION

In accordance with the foregoing, Defendant's motion to dismiss, Dkt. No. [16], is **GRANTED**, and this case is **DISMISSED**. Defendant's motion to dismiss Plaintiff's original complaint, Dkt. No. [12], is **DENIED as moot**. The Clerk is **DIRECTED** to close this case.

**IT IS SO ORDERED** this 20th day of April, 2026.

_____
**Leigh Martin May**
**Chief United States District Judge**

13