# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

VICTORIA OFORIWAH TWUMASI ANKRAH, on behalf of herself and others similarly situated,

    Plaintiff,

v.

STREAMLINE FUNDING, LLC d/b/a FUNDIBLE

    Defendant.

Case No. 1:26-cv-00784

## **PLAINTIFF'S OPPOSITION TO THE MOTION TO DISMISS**

## **INTRODUCTION**

Defendant's Motion to Dismiss is built on a series of mischaracterizations of the Amended Complaint, improper attempts to impose heightened pleading requirements, and legal arguments that are premature at the Rule 12(b)(6) stage. When the Complaint is read as a whole—as it must be—it plainly states a plausible claim for relief. The Motion should be denied in its entirety.

This case arises from a targeted telemarketing campaign conducted by Defendant, Streamline Funding, LLC d/b/a Fundible, directed at Plaintiff's personal residential telephone number. Plaintiff alleges that Defendant itself initiated multiple unsolicited communications—including calls, voicemail, and text messages—to a number that had been listed on the National Do Not Call Registry for nearly two decades. Those communications promoted Defendant's financing services and invited further engagement.

Defendant's Motion attempts to recast these allegations in a narrower and less compelling light by isolating select statements, ignoring the full scope of the alleged communications, and demanding evidentiary detail far beyond what Rule 8 requires. That approach is improper. At this stage, Plaintiff is required only to allege facts that plausibly suggest liability—not to prove her case or rebut hypothetical alternative explanations.

When the allegations are accepted as true and all reasonable inferences are drawn in Plaintiff's favor, the Complaint easily satisfies the pleading standard. Defendant's arguments are therefore insufficient to justify dismissal.

Defendant's request for dismissal with prejudice is particularly inappropriate at this early stage, where amendment would be freely permitted.

## BACKGROUND

Plaintiff is an individual who uses her telephone number as a personal residential line. ECF No. 12 ¶¶ 20–23. She uses this number in the same manner one would use a traditional home telephone—for personal communications, family matters, and routine private affairs. Id. Plaintiff has never used this number for any business purpose and has never held it out as a commercial contact. Id. ¶¶ 26–27.

Plaintiff personally pays for her cellular service and is the sole user of the number. Id. ¶¶ 24–25. The number is not associated with any business entity, nor is it reimbursed or subsidized by any commercial enterprise. Id. Plaintiff's number has been listed on the National Do Not Call Registry since April 29, 2005. Id. ¶ 28. This long-standing registration reflects Plaintiff's clear and unequivocal intent not to receive telemarketing solicitations. The Registry exists precisely to protect consumers like Plaintiff from the type of conduct alleged here.

Despite this, Defendant initiated a series of unsolicited communications to Plaintiff in January 2026. Id. ¶ 29. These communications were not isolated or

accidental. Rather, they were repeated, coordinated, and clearly part of a unified effort to promote Defendant's financing services. On January 3, 2026, Plaintiff received a text message from a number associated with Defendant. *Id.* ¶ 30. The message identified the sender as affiliated with "Fundible" and promoted financing products, including lines of credit, equipment financing, and term loans. The message also referenced prior contact attempts and encouraged further discussion. Two days later, on January 5, 2026, Plaintiff received multiple calls from Defendant. *Id.* ¶ 31. Six of these calls originated from one number, and two originated from another number, both associated with Defendant. *Id.* ¶¶ 32, 35. Plaintiff answered several of these calls, during which the callers identified themselves as calling from Fundible regarding financing services. *Id.* ¶ 33. During these calls, Defendant attempted to engage Plaintiff in discussions about financing options. Plaintiff expressly indicated that she was not interested and requested that the calls stop. *Id.* ¶ 34. Nevertheless, Defendant persisted. Defendant also left a voicemail message in which the caller again identified himself as being with Fundible and referenced a purported request for funding. *Id.* ¶ 36. The caller invited Plaintiff to return the call to discuss financing options and referenced a Fundible email address. *Id.* This message further confirms that the communications were initiated by Defendant and were intended to promote its services.

4

Following these calls, Defendant sent additional text messages that continued to promote its financing services. *Id.* ¶ 37. These messages included links to Defendant's website and instructions on how to apply for financing. The image embedded on page 9 of the Amended Complaint shows that these messages were explicitly commercial in nature and designed to solicit business. Although some communications referenced an individual named "Tyler," Plaintiff alleges that the communications were directed to her number and promoted Defendant's services to the recipient. *Id.* ¶¶ 40, 44–45. Plaintiff had no relationship with Defendant, never requested information, and never consented to receive any communications. *Id.* ¶¶ 48–50.

## ARGUMENT

### I.    Plaintiff Plausibly Alleges That Defendant Itself Initiated the Communications.

Plaintiff's theory is not ambiguous. She alleges that Defendant itself initiated the communications at issue, and she supports that allegation with specific factual detail. First, Plaintiff alleges that the communications originated from telephone numbers used by Defendant in connection with its Fundible business. ECF No. 12 ¶ 42. Second, when Plaintiff answered multiple calls, the callers identified themselves as calling from Fundible and discussed Defendant's financing services.

*Id.* ¶ 33. This direct identification during live conversations is a concrete factual allegation linking Defendant to the calls.

Third, the voicemail left for Plaintiff again identified the caller as being with Fundible and referenced a Fundible email address**,** further tying the communication to Defendant's business infrastructure. *Id.* ¶ 36. Fourth, the text messages themselves, while not being pursued as TCPA violations as the Amended Complaint states[1], reinforce this connection. They promote Defendant's financing services, reference Defendant's offerings, and include links to Defendant's website. *Id.* ¶ 37. The images show that the sender directed the recipient to "apply" through Fundible's platform, leaving no ambiguity as to whose services were being marketed:

---

[1] "While the Plaintiff is not pursuing the text calls as a TCPA violation, they are further evidence of the purpose of the Defendant's calls. *Id.* ¶ 38.



Taken together, these allegations create a consistent and coherent picture: the same

entity—Defendant—used multiple communication channels to promote its services

to Plaintiff. The use of Defendant's name, website, and email domain across calls,

voicemail, and texts supports a reasonable inference that Defendant directly initiated the communications. At the pleading stage, that is more than sufficient.

Those allegations support a reasonable inference of direct involvement sufficient to survive a motion to dismiss. "At first glance, these allegations seem like a strong basis for attributing the … [calls and text] to the Defendant. After all, when a person introduces herself across the table as Olivia or Emma --- we generally conclude without much hesitation that is indeed who she is." *See Bradshaw v. CHW Grp., Inc.*, No. 24-cv-00114 (MEF)(JBC), 2025 U.S. Dist. LEXIS 13649, at *5-6 (D.N.J. Jan. 24, 2025) ("So too as to the December 8 call. The caller allegedly introduced herself as 'Erica . . . from the Defendant.' Why then would it not be plausible to conclude that she was, in fact, 'Erica . . . from the Defendant'?").

"The logic of this approach is reflected in the decisions of any number of federal courts. *See, e.g., Marks v. Unique Lifestyle Vacations, LLC*, 2024 U.S. Dist. LEXIS 41804, 2024 WL 1051974, at *3 (E.D. Pa. Mar. 11, 2024); *Katz v. CHW Grp., Inc.*, 2023 U.S. Dist. LEXIS 176206, 2023 WL 6445798, at *4 (W.D. Ark. Sept. 29, 2023); *Smith v. Am.-Amicable Life Ins. Co.*, 2022 U.S. Dist. LEXIS 62115 at *2 (E.D. Pa. Apr. 4, 2022); *Adam v. CHW Grp., Inc.*, 2021 U.S. Dist. LEXIS 170620, 2021 WL 7285905, at *5 (N.D. Iowa Sept. 9, 2021)." *Id.*; *accord Taylor v. Suntuity Solar L.L.C.*, No. 8:23-cv-00694-MSS-AEP, 2024 U.S.

Dist. LEXIS 38838, at *15-16 (M.D. Fla. Mar. 6, 2024) ("Plaintiff's allegations are sufficient to plead a claim for Defendant's direct liability under the TCPA at this stage. Plaintiff alleges Defendant initiated the telemarketing calls. Specifically, Plaintiff alleges, 'The Plaintiff received calls from Suntuity Solar on at least January 31 and February 8, 2023.' Plaintiff further alleges: 'During both calls, Plaintiff was initially provided a generic, fake name, "solar of America."' 'The only real company identified during the calls was Suntuity.'" (cleaned up)); *Stemke v. Marc Jones Constr., LLC*, No. 5:21-cv-274-30PRL, 2021 U.S. Dist. LEXIS 181916, at *6-7 (M.D. Fla. Sep. 23, 2021) ("Sunpro's motion to dismiss goes beyond the pleading to challenge the merits of the alleged facts. Indeed, the crux of Sunpro's motion questions Plaintiff's allegations that Sunpro placed the subject calls. For example, Sunpro argues that Plaintiff fails to 'support' a plausible inference that Sunpro is directly or vicariously liable for the calls Plaintiff received because she does not allege facts that associate Sunpro to the calls allegedly at issue. But a review of the Amended Complaint belies this argument—Plaintiff alleges several times that she or her attorneys confirmed that Sunpro placed the subject calls. Plaintiff even includes the phone numbers and the dates she received the calls."); *see also Slominski v. Globe Life Inc.*, No. 7:23-CV-1081-D, 2024 U.S. Dist. LEXIS 24378, at *15 (E.D.N.C. Feb. 12, 2024) ("Slominski alleges that on March 14 and March 15, 2023, she received calls and voicemail messages on her

9

cell phone that asked her to call Globe. The voicemail messages concerned 'an insurance plan.' Globe sells insurance plans. … Defendants contend Slominski fails to plausibly attribute the alleged prerecorded voicemail messages to Globe. Slominski, however, plausibly alleges enough information about the contents of the voicemail messages she received on March 14 and March 15, 2023, to survive a motion to dismiss." (cleaned up)).

The nonbinding authorities that Defendant highlights are easily distinguishable. In *Scruggs*, the Court held that the Plaintiff provided "virtually no detail about the calls at issue, let alone the identity of the caller(s), the duration, the number(s) from which they originated, the substance of the calls, or more importantly who physically placed any of the calls—i.e., CHW or some third party who merely stated they were 'associated with' CHW somehow." *Scruggs v. CHW Grp., Inc.*, No. 2:20CV48, 2020 WL 9348208, at *5 (E.D. Va. Nov. 12, 2020). That is plainly distinguishable from the pleadings here.

Defendant's argument improperly demands additional detail about internal systems, dialing mechanisms, or corporate processes. But Plaintiff has already alleged what she experienced: repeated communications identifying Defendant, promoting Defendant's services, and directing her to Defendant's platform. That is precisely the type of factual content courts rely on to infer direct liability at this stage.

10

## II.    Defendant's Personal-Registration on the Do Not Call Registry Argument is Contrary to Law and Widely Rejected.

Defendant's next argument—that Plaintiff must have personally registered her number on the Registry—fails. The provisions of the TCPA do not require that one *personally register* their number on the Do Not Call Registry because that fact would be *impossible to prove*, as the FTC is neither authorized to nor collects such information. For that matter, such a holding would also run afoul of the 2003 TCPA Order, which explicitly noted that "the only consumer information telemarketers and sellers will receive from the national registry is the registrant's telephone number. *This is the minimum amount of information that can be provided* to implement the national registry." *In re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991* ("2003 TCPA Order"), CG Docket No. 02-278, Report and Order, 18 FCC Rcd. 14014, 14037 (emphasis added). Registering a telephone number on the Registry does not require the provision of any personally identifiable information, and requiring such information would defeat the purposes of registration, consumer privacy. Thus, as an initial matter, the government is *not even authorized* to collect the information the Defendant claims the Plaintiff is required to prove as a legal matter. It follows that proving such information cannot be an element of a TCPA claim.

Relying on *Rombough v. Robert D. Smith Ins. Agency, Inc.*, No. 22-CV-15-CJW-MAR, 2022 WL 2713278, at *2 (N.D. Iowa June 9, 2022), the Defendant

11

misstates the applicable law. The FCC's regulations permit a "residential telephone subscriber" to register "his or her telephone number" on the Registry. 47 C.F.R. § 64.1200(c)(2). Once a telephone number is registered on the Registry, the "registrations must be honored indefinitely, or until the registration is cancelled by the consumer of the telephone number is removed by the database administrator." *Id*. Previously, such registrations had to be renewed, but this hasn't been the case since at least the mid-2000s. Therefore, in addition to requiring the government to collect information it isn't even legally authorized to collect, *Rombough* purports to require some TCPA plaintiffs to do the impossible–personally *re*register a number already on the Registry. It has been disagreed with by every other court to consider it and its premises and was most notably rejected in *Callier v. Am.- Amicable Life Ins. Co. of Texas,* No. EP-22-CV-00018-FM, 2022 WL 17732717, at *5 (W.D. Tex. Oct. 18, 2022), where the Western District of Texas called the argument underlying the *Rombough* decision one that "borders on the frivolous." The *Callier* court went on to state:

> *Rombough's* nitpicky formality is thoroughly unpersuasive. The DNC is not auto-populated: it is a list of phone numbers for individuals who have requested that telemarketers not contact them. While it is possible a third-party may have registered a plaintiff's phone number before a plaintiff acquired it, this is unlikely given how infrequently people change numbers. And it is particularly unlikely here given Plaintiff's well-documented desire that telemarketers respect his registration with the DNC.

*Id.* at *6 (cleaned up). The *Callier* Court is far from alone. *See e.g. Murch v. GPS*

*Cap. Mkts., LLC,* 2025 U.S. Dist. LEXIS 169651, *38 (D. Or. June 6, 2025)

("After fully considering the TCPA's private right of action, the statutory scheme,

and other language in the implementing regulation as discussed above, the Court

declines to follow *Rombough*."). Indeed, three years after *Callier*, another federal

court recently made forcefully clear how far of an outlier *Rombough* was:

> the Court holds that a plaintiff alleging a violation of the TCPA's NDNC Registry provision need not allege or prove that he personally registered his phone number to state a claim. Every court to consider this issue — with one exception — has reached the same conclusion. *See, e.g., Chinitz v. Intero Real Estate Servs.*, No. 18-cv-05623-BLF, 2020 U.S. Dist. LEXIS 247921, 2020 WL 7391299, at *14 (N.D. Cal. July 22, 2020); *Abrahamian v. loanDepot.com LLC*, No. 23-cv-00728-PHX-SMB, 2024 U.S. Dist. LEXIS 44009, 2024 WL 1092442, at *2 (D. Ariz. Mar. 13, 2024). The exceptional case is *Caitlin Rombough v. Robert D. Smith Ins. Agency, Inc.*, No. 22-cv-15-CJW-MAR, 2022 U.S. Dist. LEXIS 124614, 2022 WL 2713278, at *2-3 (N.D. Iowa June 9, 2022) (dismissing claim because plaintiff did not allege that she personally registered her phone number in the NDNC Registry). In *Rombough*, the court focused on the following language from the implementing regulation: "No person or entity shall initiate any telephone solicitation to . . . [a] residential telephone subscriber *who has registered* his or her telephone number on the" NDNC Registry." 47 C.F.R. § 64.1200(c) (emphasis added). This language was viewed in isolation, and the court did not explain how its construction could be reconciled with the very next sentence of the implementing regulation, which provides that "registrations must be honored indefinitely[.]" *Id.* There is no limitation as to time period; nor is there a limitation as to whether the phone number is still used by the person who originally listed it in the NDNC Registry.

*Nichols v. eHealthInsurance Servs.*, 2025 U.S. Dist. LEXIS 37917, *8-9 (N.D. Ca.,

March 3, 2025).  This Court should hold the same.

The policy consequences of Defendant's rule underscore its untenability. Millions of Americans change phone numbers every year. If Defendant's theory were correct, each consumer inheriting a number that had already been placed on the Registry would lose their protections. Telemarketers could then flood those numbers with impunity, despite Congress's intent to stop unwanted solicitations. Nothing in the statute, regulations, or case law supports this loophole, and this Court should not create one.

### III.    Plaintiff Plausibly Alleges Multiple Telephone Solicitations as the calls were Marketing Calls.

The DNC Provision provides that "[n]o person or entity shall initiate any telephone solicitation to . . . [a] residential telephone subscriber..." 47 C.F.R. § 64.1200(c)(2). The Plaintiffs have alleged that they received telephone solicitations and that they are a residential telephone subscriber. The TCPA itself defines a telephone solicitation as "the initiation of a telephone call or message *for the purpose* of encouraging the purchase or rental of, or investment in, property, goods, or services." 47 U.S.C. § 227(a)(4). (emphasis added); 47 C.F.R. § 64.1200(f)(13), (15).

To determine whether a message is a "telephone solicitation" courts should approach the "problem with a measure of common sense." *Chesbro v. Best Buy Stores, L.P.*, 705 F.3d 913, 918 (9th Cir. 2012). Both the content and the context of the message should be considered and specific words are not

required. *Id.* ("Neither the statute nor the regulations require an explicit mention of a good, product, or service where the implication is clear from the context.").

Defendant next argues that Plaintiff fails to allege more than one qualifying telephone solicitation within a twelve-month period. That argument again rests on a mischaracterization of the Amended Complaint. The Amended Complaint alleges that Defendant engaged in a series of telemarketing communications, including at least eight calls, a voicemail, and multiple follow-up messages, all promoting Defendant's financing services. ECF No. 12 ¶¶ 29, 31–37, 46. Plaintiff specifically alleges that she answered multiple calls during which Defendant attempted to market financing services, and that Defendant continued its outreach even after she stated she was not interested and asked that the calls stop. *Id.* ¶¶ 33–34, 46.

These allegations alone establish more than one solicitation. Plaintiff does not rely on a single communication. Rather, she alleges repeated, coordinated outreach in which Defendant attempted to promote its services across multiple interactions. Defendant's argument improperly narrows the analysis by focusing on a single voicemail and disregarding the additional calls that Plaintiff answered. But the Amended Complaint expressly alleges that multiple live calls involved attempts to market Defendant's financing services, which independently qualify as solicitations. *Id.* ¶¶ 33, 46. These allegations are specific, concrete, and sufficient to plausibly allege multiple contacts. At the pleading stage, Plaintiff is not required

15

to provide a transcript of each call or detail every word spoken. Rather, Plaintiff must allege facts that allow a reasonable inference that the calls were solicitations. Plaintiff has done so and this is more than enough to warrant that the parties continue to discovery. *See e.g. Martin v. Bottom Line Concepts, LLC*, 723 F. Supp. 3d 270, 280 (S.D.N.Y. 2024) (holding plaintiff adequately pled direct liability when the plaintiff received calls identifying the defendant); *Toney v. Quality Res., Inc.*, 75 F. Supp. 3d 727, 746 (N.D. Ill. 2014); *Abramson v. Josco Energy USA, LLC*, No. 2:21-cv-1322, 2022 U.S. Dist. LEXIS 237792, at *6 (W.D. Pa. Aug. 1, 2022) ("Defendant might dispute those facts, but as now alleged, they go beyond formulaically reciting the elements of Plaintiff's cause of action, and the Court must take them as true at this early stage in the litigation."). Indeed, courts have found in TCPA cases that using the same caller identification number on multiple generic telemarketing calls is sufficient to allege direct liability against a defendant. For example, in *Bird v. Pro Star Builders, Inc.,* No. 2:22-cv-03610-JLS-JEM, 2022 U.S. Dist. LEXIS 215155, at *7-8 (C.D. Cal. Nov. 28, 2022), which itself cited to other similar decisions, the court held:

> Further, it is reasonable to infer that Pro Star was responsible for the alleged February 24 unanswered call from the same number as the second call on April 19. Indeed, courts in other districts have recently found that a plaintiff has sufficiently alleged multiple calls from the same entity when he or she received more than one call from the same number but traced the calls back to the defendant after having answered only once. See, e.g., Chapman v. Nat'l Health Plans &

Benefits Agency, LLC, 2022 U.S. Dist. LEXIS 138916, 2022 WL 3130225, at *7 (E.D. Mich. Aug. 4, 2022) (finding that plaintiff plausibly pleaded that four calls—including three unanswered calls—had come from the same defendant because they had originated from the same number and the plaintiff alleged that other individuals had complained about receiving solicitations from that number)…The Court agrees that it is reasonable to infer that the same caller is responsible for calls from the same number, whether those calls are answered or not. Accordingly, the Court finds that Plaintiff has plausibly alleged that the two calls at issue came from Pro Star.

*Accord Kemen v. Cincinnati Bell Telephone Company*, No. 1:22-cv-00152-DRC, *Order granting leave to amend the complaint* (ECF 17) (May 24, 2023) ("As for the two unanswered calls, Kemen has plausibly alleged Cincinnati Bell placed them for a telemarketing purpose too. To start, unanswered calls can 'count' for TCPA purposes. … And the allegations here give rise to a plausible inference that Cincinnati Bell placed the two unanswered calls for a telemarketing reason."). Defendant's attempt to isolate one call and disregard the remaining alleged contacts improperly fragments the Complaint. When the allegations are considered as a whole, they clearly support the inference that more than one solicitation occurred.

Defendant's reliance on the fact that some communications referenced "Tyler" does not change the analysis. Plaintiff alleges that the calls were directed to her number and promoted Defendant's services to the recipient, regardless of the name used. Id. ¶¶ 40, 44–45. The statutory inquiry focuses on whether the communication encourages the purchase of goods or services—not whether the caller correctly identified the intended recipient.

Left with the plain reality that the calls encourage "the purchase or rental of, or investment in, property, goods, or services", the Defendant posits a unique theory. Since the Defendant asserts that the text messages were *intended* for someone else, the Plaintiffs can't state a claim. Interestingly, such a position

provides a perfect loophole for telemarketers: simply send a text message advertisement to any number at any time (whether or not they are on the Do Not Call Registry), and simply label it as intended for someone else. Luckily for consumers, such a position ignores the language from the statute which restricts "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is *transmitted to any person…*" 47 U.S.C. § 227(a)(4). (emphasis added). Of course, that Plaintiff is such a "person". Not surprisingly then, the Plaintiff is unaware of any Court that has adopted the Defendant's theory, however it has been explicitly rejected, as recently as last year. As explained in *Cribier v. Carvana, LLC*, 2024 U.S. Dist. LEXIS 140538, *14-18 (S.D. Cal.):

> Defendant also argues that none of the messages it sent Plaintiff are "telephone solicitations" because Plaintiff was not the "intended recipient." (ECF No. 13 at 12) ("a 'telephone solicitation' does not occur if the recipient is not the target of the supposed solicitation"). Defendant's argument is one of interpretation: "telephone solicitation" is defined in the TCPA. For the reasons below, the TCPA's text does not support Defendant's argument…
>
> First, Defendant's argument is not grounded in any statutory text. Statutory interpretation begins with the text. *Republic of Sudan v. Harrison*, 587 U.S. 1, 8, 139 S. Ct. 1048, 1056, 203 L. Ed. 2d 433 (2019); *see also Boeing Co. v. United States*, 258 F.3d 958, 967 (9th Cir. 2001) (noting that the tenets of statutory construction apply with equal force to the interpretation of regulations). If the "statutory meaning is plain and unambiguous, then [the Court's] sole function . . . is to enforce it according to its terms." *Pit River Tribe v. Bureau of Land Mgmt.*, 939 F.3d 962, 970 (9th Cir. 2019) (internal quotations omitted). Here, the text of the statute says that a telephone solicitation is a

"message for the purpose of encouraging the purchase or rental of, or investment in, property, [*16] goods, or services, which is transmitted to **any** person . . . ."**4** 47 U.S.C. § 227(a)(4) (emphasis added).

Defendant argues that "'a telephone solicitation' does not occur if the recipient is not the target [, or intended recipient] of the supposed solicitation." (ECF No. 15 at 11); *see also* (ECF No. 13 at 12). The Court notes that neither "target" nor "intended recipient" appears in the definition of "telephone solicitation." 47 U.S.C. § 227(a)(4). Defendant's "argument thus starts off in the backseat, for there is no obvious statutory text on which to ground an 'intended recipient' interpretation." *Lemos*, 960 F.3d at 1168.

Moreover, the text of the statute demonstrates that a "telephone solicitation" occurs regardless of whether the contacted party is the intended recipient. Simply, a "telephone solicitation" includes messages "transmitted to any person." 47 U.S.C. 227(a)(4) (emphasis added). And tellingly, none of the exceptions in the statute relate to the caller's intent. *See Lemos*, 960 F.3d at 1170 ("if a caller's intent could defeat liability, the safe harbors would be unnecessary.") Thus, based on the text, a "telephone solicitation" may occur regardless of whether that person is the intended recipient.

Second, references to "telephone solicitation" in other parts of the statute do not support Defendant's argument. For example, "telephone solicitation" appears frequently in subsection (c). None of those references support Defendant's interpretation that the caller's intent matters. Instead, they support the opposite interpretation—that liability depends on whether the person called (the actual recipient) objects to the solicitation. *See, e.g.*, 47 U.S.C. § 227(c)(3)(F) (regulations shall "prohibit any person from making or transmitting a telephone solicitation to the telephone number of any subscriber included in [the do-not-call database]") (emphasis added). Likewise, other parts of the statute do not reference messages to the "target" or "intended recipient." *Id.* § 227(c)(1) (no reference to "target", "intended recipient", or similar terms). Simply, the focus is on who received the telephone solicitation—not the caller's intent. *See id.* § 227(c)(3)(F).

Finally, the statutory purpose of the TCPA is better served by rejecting Defendant's argument. *See Lemos*, 960 F.3d at 1169. In 1991 Congress

passed the TCPA in response to "a torrent of vociferous consumer complaints about intrusive robocalls." *Barr v. Am. Ass'n of Pol. Consultants, Inc.*, 591 U.S. 610, 614, 140 S. Ct. 2335, 207 L. Ed. 2d 784 (2020). "Congress found that banning robocalls was 'the only effective means of protecting telephone consumers from this nuisance and privacy invasion.' To that end, [*18] the TCPA imposed various restrictions on the use of automated telephone equipment." *Id.* at 615 (internal citations omitted); *see also Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372, 132 S. Ct. 740, 181 L. Ed. 2d 881 (2012) (purpose of TCPA was to crack down on unrestricted telemarketing because it created an intrusive invasion of privacy). It would frustrate the TCPA's purpose if a caller could violate the TCPA yet avoid liability because they sent the offending messages to the wrong person. *Cf. Lemos*, 960 F.3d at 1169-70 (analyzing congressional findings when enacting the TCPA and rejecting argument that a defendant's intent to call a different party could defeat TCPA liability). As a result, Defendant's argument is counter to the TCPA's purpose.

Indeed, other courts have held the same with respect to similar analysis under the TCPA. In reaching the same conclusion as the Ninth Circuit, the Seventh Circuit noted that "[t]he phrase 'intended recipient' does not appear anywhere in § 227, so what justification could there be for equating 'called party' with 'intended recipient of the call'?" *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 640 (7th Cir. 2012). The Eleventh Circuit held the same. *See Osorio v. State Farm Bank, F.S.B.*, 746 F.3d 1242, 1252 (11th Cir. 2014) ("We accordingly reject State Farm's argument that the 'intended recipient' is the 'called party'…")

Were that not enough, the FCC's interpretation—even if not binding—is in accord. *See In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, 30 FCC Rcd. 7961 (2015) (¶ 73) ("We find that

the 'called party' is the subscriber, *i.e.*, the consumer assigned the telephone number dialed and billed for the call, or the non-subscriber customary user of a telephone number included in a family or business calling plan. Both such individuals can give prior express consent to be called at that number."); *see also id*. at ¶ 72 ("We clarify that the TCPA requires the consent not of the intended recipient of a call, but of the current subscriber (or non-subscriber customary user of the phone) and that caller best practices can facilitate detection of reassignments before calls.").

This Court should hold the same as the Plaintiff alleges that Defendant repeatedly attempted to market financing services through multiple communications directed to her number. That is sufficient.

## IV.    The Plaintiff's Claims are Not Duplicative for Purposes of Dismissal.

Next, the Defendant argues in a footnote that the Plaintiff's two claims, one for violations of the TCPA and the other for a Georgia state law for telemarketing are duplicative, simply because both alleged violations fall under 47 U.S.C. 227(c)(5). However, the Court under Rule 12(b)(6) looks to whether a plaintiff has stated a claim upon which relief can be granted, not whether those claims may lead to double recovery at the end of the litigation. Pleading alternative theories of recovery is explicitly contemplated and permitted by the Federal Rules of Civil Procedure. See Fed. R. Civ. P. 18(a). A potential double recovery problem down the road is simply not an appropriate ground on which to dismiss

Plaintiff's claims at this juncture. *See, e.g., Bergeron v. Ochsner Health System*, No. 17-519, 2017 U.S. Dist. LEXIS 135622, 2017 WL 3648451, at *10 (E.D. La. Aug. 24, 2017). Indeed, a similar motion to dismiss was denied in a TCPA case in *Guadian v. Progressive Debt Relief, LLC*, 2023 U.S. Dist. LEXIS 200471, *10 (W.D. Tex.), which held, "A potential double recovery problem down the road is simply not an appropriate ground on which to dismiss claims under Rule 12(b)(6). Thus, it would not be appropriate for the Court to recommend dismissal of a claim at this stage because of the possibility of double recovery later."

Furthermore, courts have flatly rejected similar arguments about other state telemarketing laws not being able to be brought along with a TCPA claim. *See Hunsinger v. Atmos Energy Corp.,* 2024 U.S. Dist. LEXIS 81540, *5 (N.D. Tex April 15, 2024) ("TCPA and section 305.053 claims are often brought together, but other courts in this circuit have acknowledged the two as separate causes of action."); *see also Guadian v. Progressive Debt Relief, LLC*, No. EP-23-CV-00235-FM, 2023 U.S. Dist. LEXIS 200471, 2023 WL 7393129, at *4 (W.D. Tex. Nov. 8, 2023) (noting that while there is no indication that double recovery may be had for the same violation of the TCPA and section 305.053, a plaintiff may assert claims under both), *adopted by* 2023 U.S. Dist. LEXIS 211568, 2023 WL 8242475 (W.D. Tex. Nov. 28, 2023).

**CONCLUSION**

Defendant's Motion to Dismiss is premised on a series of mischaracterizations of the Amended Complaint and improper attempts to impose heightened pleading requirements that are inconsistent with Rule 12(b)(6). When the allegations are accepted as true—as they must be—Plaintiff has plausibly alleged that Defendant initiated multiple telemarketing calls to her residential telephone number, which had long been listed on the National Do Not Call Registry, without her consent.

Plaintiff's Amended Complaint provides detailed factual allegations regarding the content, timing, and origin of Defendant's communications, including multiple calls in which Defendant identified itself as "Fundible" and attempted to market its financing services. These allegations easily satisfy the applicable pleading standard.

Defendant's remaining arguments—regarding the number of solicitations, the identity of the intended recipient, and the registration of Plaintiff's number—are likewise unavailing and, in many instances, contrary to the statutory text, regulatory framework, and overwhelming weight of authority.

At bottom, Defendant's Motion asks the Court to disregard well-pleaded allegations, draw inferences against Plaintiff, and resolve factual disputes that are properly reserved for discovery. That is not the role of a motion to dismiss.

For these reasons, Plaintiff respectfully requests that the Court deny Defendant's Motion to Dismiss in its entirety. To the extent the Court finds any deficiency, Plaintiff requests leave to amend, as justice so requires.

DATED this 27th day of April, 2026.

/s/ *Anthony I. Paronich*
Anthony I. Paronich, *pro hac vice*
Paronich Law, P.C.
350 Lincoln Street, Suite 2400
Hingham, MA 02043
Tel: (617) 485-0018
anthony@paronichlaw.com

Valerie Chinn, Georgia Bar No. 248468
Attorney at Law
CHINN LAW FIRM, LLC
245 N. Highland Ave.
Suite 230 #7
Atlanta, GA 30307
Direct:  404-955-7732
Facsimile:  404-745-8605
Email:  vchinn@chinnlawfirm.com

*Counsel for Plaintiff and the proposed class*

24