## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA

VICTORIA OFORIWAH TWUMASI
ANKRAH, on behalf of herself and
others similarly situated,

        Plaintiff,

      v.

STREAMLINE FUNDING, LLC d/b/a
FUNDIBLE,

        Defendant.

Case No. 1:26-cv-00784-JPB

Hon. J.P. Boulee

## DEFENDANT'S REPLY IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT

## I.    Introduction.

In her Opposition to Streamline's Motion to Dismiss ("Motion"), Plaintiff improperly attempts to rewrite or recast her pleading in an effort to avoid dismissal. As the Motion notes, the First Amended Complaint (Dkt. 12, "FAC") expressly alleges that Plaintiff "is ***not pursuing the voice calls as a TCPA violation***" and, thus, that she only seeks relief based on the two alleged texts. Dkt. 14-1 at 6 (quoting Dkt. 12, ¶ 38) (emphasis added). However, texts are not subject to the TCPA's DNC provisions—which is the only claim Plaintiff asserts in this case—and, therefore, her entire FAC is subject to dismissal with prejudice for this reason alone. *See* Dkt. 14-1 at 2, 4-13 (collecting cases). Plaintiff's Opposition does not even address, and thus concedes, this key threshold argument. *See UBS Fin. Servs., Inc. of Puerto Rico v. Efron*, No. 23-13879, 2025 WL 1833578, at *10 (11th Cir. July 3, 2025) ("[T]he failure to make arguments and cite authorities in support of an issue waives it.").[1]

Perhaps recognizing that the foregoing allegation is fatal to her whole case, Plaintiff instead misquotes it in a footnote to suggest that she merely disclaimed recovery for "text calls." *See* Dkt. 15 at 6, n.1. However, "plaintiffs cannot amend their complaint through a response to a motion to dismiss." *Burgess v. Religious Tech.*

---

[1] *See also Valles v. State Farm Fire & Cas. Co.*, 2021 WL 322097, at *6 (N.D. Ga. Feb. 1, 2021) (deeming claim abandoned where the plaintiff "did not respond to Defendant's motion to dismiss this claim"); *Tuso v. Lennar Corp.,* 2024 WL 1239474, at *3 (S.D. Fla. Mar. 22, 2024) (ruling similarly in a TCPA case, citing various cases).

*Ctr., Inc.*, 600 F.App'x 657, 665 (11th Cir. 2015). Further, having expressly abandoned any TCPA claim predicated on "voice calls" in her FAC, Plaintiff cannot now try to rely on or resurrect those same allegations to salvage her claim through her Opposition. *See, e.g., Simpson v. All Saints & St. Luke's Episcopal Home for the Retired,* 2015 WL 13736271, at *3 (N.D. Ga. Aug. 28, 2015), *report and rec. adopted sub nom.* 2015 WL 7313871 (Nov. 20, 2015) (deeming claim abandoned where plaintiff removed allegations from his original complaint when amending, and dismissing).[2] Accordingly, the Court should disregard Plaintiff's allegations and arguments as to any voice calls when ruling on the Motion. *See id.*

Aside from Plaintiff's voice call disclaimer and concession of the text message issue, the FAC still fails to plausibly allege Streamline physically placed any "telephone solicitation" calls to her in violation of the TCPA or state law. Her conclusory allegations are insufficient to plausibly plead any claim under *Iqbal/Twombly*, much less under the weight of applicable authority on the TCPA, as the Motion shows. *See* Dkt. 14-1 at 13-24. The Opposition does not show otherwise.

**II.     Plaintiff Only Seeks Relief For Text Messages in Her FAC, Which Plaintiff Concedes Are Not Actionable Under Section 227(c) of the TCPA.**

Plaintiff's Opposition notably fails to respond to Streamline's threshold

---

[2] *See also Gailes v. Marengo Cnty. Sheriff's Dep't,* 916 F. Supp. 2d 1238, 1243-44, n.11 (S.D. Ala. 2013) (dismissing claim that had been expressly abandoned); *Carter-Frazer v. Invs. One Corp.*, 2012 WL 12882927, at *7 (N.D. Ga. Dec. 7, 2012), *report and rec. adopted*, 2013 WL 12123674 (Jan. 2, 2013) (ruling similarly).

argument in the Motion that text messages are not actionable under Section 227(c) of the TCPA. *See* Dkt. 14-1 at 4–13. By ignoring that argument altogether, Plaintiff has conceded that Section 227(c)'s private right of action extends only to "telephone calls" (*i.e.*, voice calls) and not text messages. *See*, *e.g.*, *UBS*, *Valles,* and *Tuso, supra.*

Plaintiff attempts to change her express disclaimer by mischaracterizing her actually pled allegations and discussing the alleged voice calls as though they remain actionable. *See* Dkt. 15 at 6, n.1. Under settled federal law, however, "Plaintiff cannot supplement the allegations of the [FAC] through a brief in response to a motion to dismiss, and [she] certainly cannot contradict the allegations in the [FAC] with a response to a Motion to Dismiss." *Ramirez v. City of Fort Lauderdale Fire Rescue*, 2019 WL 13235809, at *2 (S.D. Fla. Apr. 29, 2019) (citing *Wilchombe v. TeeVee Toons. Inc.*, 555 F.3d 949, 959 (11th Cir. 2009)). This Court should rule similarly.

At bottom, Plaintiff expressly disclaimed liability based on any "voice calls" in her FAC, she deliberately did so when amending, and she is now bound by those pled allegations for purposes of Streamline's Motion. Having chosen to disclaim voice calls, Plaintiff cannot rely on them to save her defective claim or amend her pleading through briefing. And as she concedes that the texts are not actionable, her claim fails.

## III.   <u>Plaintiff Fails To Plausibly Allege Any Theory Of TCPA Liability.</u>

As to her failure to plausibly allege a direct or vicarious TCPA liability theory (*see* Dkt. 14-1 at 13-21), Plaintiff's Opposition addresses only potential direct TCPA

liability, thus conceding the issue of vicarious TCPA liability in the Motion. *See* Dkt. 15 at 5-10; Dkt. 14-1 at 21. Plaintiff's arguments on direct liability nonetheless fail.

As discussed in the Motion, Plaintiff does not directly connect Streamline as the ***physical*** sender/maker of the subject communications, as the weight of applicable federal authority requires. *See* Dkt. 14-1 at 13-21. And the few (if any) "facts" alleged in her FAC purporting to suggest otherwise improperly contradict her original pleading. *See id.* at 17-18. Such directly contradictory "sham" allegations need not be accepted as true under Rule 12(b)(6), as courts in this Circuit and elsewhere have held. *Id.* at 3, 17-18 (citing *Pelfrey*, *Rubinstein*, and *Forney*). Again, Plaintiff's Opposition ignores, thereby conceding, that argument too. *See, e.g., UBS* and *Valles*, *supra.*

The Motion further shows how Plaintiff's contention that "the calls originated from telephone numbers used by Defendant in connection with its Fundible business" is unsupported by any factual allegations and, thus, does not save her from dismissal. *See* Dkt. 14-1 at 18-19 (citing *Metzler* and *Aaronson*). The Motion also shows how the FAC equivocates and conclusorily asserts that either Streamline physically made the subject communications and/or a third party did. Myriad courts in and beyond this Circuit have found such allegations insufficient to plausibly allege any TCPA liability theory. *Id.* at 19-20 (collecting cases). Plaintiff does not address these points, either.

Plaintiff's Opposition also largely ignores the many authorities cited in the Motion on this front (save for one, which she misconstrues), and instead relies

exclusively on a handful of outlier decisions that are distinguishable and unpersuasive, and thus should not be applied here. *See* Dkt. 15 at 8-10 (citing various cases).

For example, the court in *Bradshaw* v. *CHW Grp., Inc.* did not even **discuss** (let alone properly apply) direct TCPA liability standards and carries no persuasive weight here. *See generally* 763 F. Supp. 3d 641 (D.N.J. 2025). The *Bradshaw* court also relied on certain factual allegations to conclude that the defendant placed the calls at issue—*i.e.,* plaintiff called the defendant and spoke to an **employee** there. *Id*. Similarly, in *Marks v. Unique Lifestyle Vacations*, 2024 WL 1051974, at *3 (E.D. Pa. Mar. 11, 2024), the plaintiff alleged he asked the callers to identify themselves, and he compared the caller's numbers to number lists on the internet where consumers complained about telemarketing from the defendant. In *Taylor v. Suntuity Solar LLC*, the plaintiff alleged the calls "followed the same script," and she received an email from "a call center agent of the Defendant" immediately following one call, "which confirmed Plaintiff spoke with a representative of Defendant during the call." 2024 WL 964199, at *1-6 (M.D. Fla. Mar. 6, 2024). In *Stemke v. Marc Jones Constr.,* the plaintiff alleged she somehow "confirmed" one of the numbers used by one of the callers "belong[ed]" to the defendant. 2021 WL 4340424, at *2–3 (M.D. Fla. Sept. 23, 2021). The plaintiff in *Slominski v. Globe Life Inc.* received several identical pre-recorded calls from the defendant, each asking her to call the defendant at the same number. *See* 2024 WL 556978, at *1 (E.D.N.C. Feb. 12, 2024). In sum, these

5

authorities are inapposite as Plaintiff does not plead any such (or even similar) facts.

The *Smith v. Am.-Amicable Life Ins. Co*. court erred by misapplying and conflating the standards for pleading "traceability" for Article III standing under Rule 12(b)(1) with the more precise standards for pleading TCPA liability theories under Rule 12(b)(6), where an indirect connection to a call will not suffice. *See* 2022 WL 1003762, at *1–2 (E.D. Pa. Apr. 4, 2022). But those are distinct legal concepts with different pleading requirements, as other courts have correctly held. *Cf. Bank v. GoHealth, LLC,* 2021 WL 2323282, at *6–12 (E.D.N.Y. Mar. 8, 2021) (dismissing).

In *Adam v. CHW Grp., Inc.,* the court misinterpreted the defendant's cited authorities on this issue (including *Aaronson*, *Frank*, and *Sheski*, which are also cited in the Motion at bar here) and incorrectly held those plaintiffs "made no allegations that the defendant placed the calls at issue." 2021 WL 7285905, at *6 (N.D. Iowa Sept. 9, 2021). However, the plaintiffs in each alleged, in conclusory and equivocating fashion, that either the defendants physically initiated the calls and/or third parties did. Again, that is what Plaintiff alleges here. *See, e.g.,* Dkt. 12, ¶¶ 44, 56.

Plaintiff's allegations here are materially indistinguishable from those rejected in the *Belleville v. Florida Insurance Services, Inc.* case cited in the Motion, which the Opposition tellingly ignores. *See* Dkt. 14-1 at 3, 14, 19 (citing 2024 WL 2342337, at *1–4 (S.D. Fla. May 23, 2024), *report and rec. adopted in relevant part by* 2024 WL 2794108 (May 31, 2024)). There, as here, the plaintiff alleged that the callers

identified themselves as calling "from" the defendant and even provided the defendant's website during the calls. *Id.* The court nevertheless held those allegations insufficient to plausibly allege direct TCPA liability because the complaint still lacked plausible factual allegations showing the defendant itself physically placed the calls. *Id.* The court also specifically rejected the plaintiff's attempt to rely solely on the caller's representations and conclusory assertions tying the calls to the defendant. *Id.*

The same fatal pleading defect exists here. Plaintiff alleges only that callers identified themselves as calling "with Fundible," discussed financing services, and referenced a Fundible email address. Dkt. 12, ¶¶ 33, 36, 43. But those allegations do not plausibly establish that Streamline itself physically initiated the calls, as opposed to an unidentified third party. *See* Dkt. 14-1 at 15. Indeed, as *Belleville* recognized, allegations concerning what a caller said during a call do not, standing alone, plausibly establish direct TCPA liability. Otherwise, any unidentified caller could create direct liability for a company simply by invoking the company's name during a call.

Contrary to Plaintiff's argument (*see* Dkt. 15 at 10), the *Scruggs v. CHW Grp., Inc.* case cited in the Motion—which is the only case Streamline cited that Plaintiff addresses in her brief—is directly on-point and supports dismissal of her FAC on direct liability grounds. There, the plaintiff was told by the callers that they were "associated with" the defendant and hinged his entire direct TCPA liability theory on that allegation, which the court found was insufficient without more. *See* Dkt. 14-1 at

7

20 (citing 2020 WL 9348208, at *6-10 (E.D. Va. Nov. 12, 2020)). *See also id.* (citing *Murray v. Choice Energy,* LLC, 2015 WL 4204398, at *2 (S.D. Ohio July 10, 2015) (dismissing on this basis, even though plaintiff was "informed that the call was from Choice Energy," where there were "no factual allegations … that Choice Energy had any active role or involvement in placing the calls")). That is what Plaintiff's FAC alleges here—*i.e.*, that some of the callers indicated they were "with" or were calling "from" "Fundible." Dkt. 12, ¶¶ 30, 33, 36, 38, 43.

In sum, the Motion shows the FAC is devoid of non-conclusory facts showing Streamline itself controlled or operated the supposed callers' numbers, physically made or initiated the subject communications directly, or employed the callers. Such naked conclusions are precisely the type of ill-pled allegations courts routinely disregard under *Twombly/Iqbal*. *See* Dkt. 14-1 at 13-20. This Court should too.

## IV.    Plaintiff Fails To Plead Facts Supporting Other Key TCPA Elements.

Plaintiff's Opposition likewise fails to rebut Streamline's argument that the FAC does not plausibly allege several other essential elements of her TCPA claim.

**First**, Plaintiff fails to plausibly allege she received more than one actionable "telephone solicitation" as defined by the TCPA's DNC regulations. As an initial matter, Plaintiff's argument here improperly attempts to resurrect the voice calls after expressly disclaiming any TCPA claim based on them and basing her claim solely on the alleged texts. *See* Dkt. 15 at 6, 15, n. 1. Again, the Court should not consider

8

arguments about any voice calls, which are now irrelevant here. *See Ramirez, supra.*

Even setting that dispositive defect aside, the FAC still lacks sufficient factual allegations from which the Court could reasonably infer that multiple voice calls constituted "telephone solicitations" under the TCPA, as the Motion shows. The Opposition does not show otherwise. Rather, Plaintiff's FAC repeatedly labels the calls "telemarketing" or "solicitations" but still does not plead what was actually said during the alleged live calls beyond vague references to "financing services" or "funding." Dkt. 12, ¶¶ 33, 39, 46. Those threadbare allegations provide no meaningful factual detail regarding the substance, purpose, or commercial content of the calls indicating they meet the statutory definition of a telephone solicitation, which is fatal to her claim, as numerous courts have found. *See* Dkt. 14-1 at 22-21 (citing *Gillam, Bell, Dahdah, Weingrad,* and *Eggelston*). The Opposition ignores these authorities.

Indeed, the FAC's only specifically quoted voice call is a single voicemail left for "Tyler." Dkt. 12, ¶ 36. But even assuming *arguendo* that one voicemail could qualify as a "telephone solicitation" (which is not conceded), only <u>one</u> alleged solicitation call is <u>not</u> enough to state a claim under Section 227(c). *See, e.g., Gillam v. Reliance First Capital, LLC*, 2023 WL 2163775, at *3 (E.D.N.Y. Feb. 22, 2023).

Plaintiff's reliance on unanswered calls fares no better. *See* Dkt. 15 at 16-17. Plaintiff asks the Court to infer that all the voice calls (answered or otherwise) were solicitations merely because some allegedly originated from the same numbers as

other calls. *Id*. But adopting that flawed reasoning would require the Court to improperly engage in a series of inferential gymnastics. For example, Plaintiff's FAC vaguely avers, without requisite supporting facts, that (i) Streamline is "headquartered in Austin, Travis County, Texas"; (ii) she received eight voice calls "from Defendant"; (iii) six of those calls originated from the same phone number with a Texas (713) area code; (iv) she answered only four of those six calls, where the callers supposedly indicated that they were "calling from Fundible regarding financing services"; (v) all other subject communications in the FAC (two texts and a voicemail) originated from different phone numbers with New York area codes (929 and 347); and (vi) one of the texts had a link to Streamline's website, which shows it is actually located in New York.[3] Dkt. 12, ¶¶ 30, 31, 36, 37. Even if *arguendo* the content of the two texts and one voicemail from the *New York* area codes qualified as "telephone solicitations," they do not support an inference that the eight ill-described voice calls from *Texas* were also solicitations, let alone that they even originated from Streamline.[4]

---

[3] *See* https://www.allareacodes.com/713 (showing this as one area code for the greater Houston, Texas area); https://www.allareacodes.com/929 (showing this as one of the many area codes for New York City, New York); https://www.allareacodes.com/347 (same); https://fundible.com/ (showing Great Neck, New York address); *see also Herrera v. CarMax Auto Superstores Calif, LLC*, 2014 WL 3398363, at *2 (C.D. Cal. July 2, 2014) ("It is not uncommon for courts to take judicial notice of factual information found on the World Wide Web."); *Schleifer v. Lexus of Manhattan,* 2019 WL 4640055, at *4 (S.D.N.Y. Sept. 24, 2019) (taking notice of area codes).

[4] *See also Naiman v. Freedom Forever, LLC*, 2019 WL 1790471, at *3 (N.D. Cal. Apr. 24, 2019) (dismissing and finding plaintiff failed to plead receipt of more than one solicitation call "by or on behalf of the same entity" as required for a DNC claim).

10

Plaintiff's "wrong number" argument further underscores why the FAC should be dismissed on this basis. *See* Dkt. 15 at 17-18. In her pleading, Plaintiff repeatedly alleges that the communications were intended for "Tyler," not for Plaintiff. Dkt. 12, ¶¶ 36, 40. The quoted voicemail confirms this: the caller referenced a ***prior*** "request for funding" submitted by "Tyler" and sought to follow up regarding that inquiry. Dkt. 12, ¶ 36. On its face, that communication reflects an attempt to respond to an existing inquiry from another individual—not an unsolicited attempt to encourage ***Plaintiff*** to purchase goods or services. While Plaintiff notes she is "unaware of any Court that has adopted the Defendant's theory" in this regard (*see* Dkt. 15 at 18), she ignores the cases cited in the Motion on this point. *See* Dkt. 14-1 at 23 (citing *Dahdah*, *Horton*). *See also Norman v. Northern Ill. Gas Co. Inc.*, 2014 WL 184774, at *2 (N.D. Ill. Jan. 16, 2014) (dismissing DNC claim where plaintiff failed to allege the defendant "encouraged the purchase or rental or investment in any goods or services" despite multiple calls from the defendant with knowledge plaintiff was not the correct party).

Plaintiff attempts to avoid this result by arguing that the TCPA focuses only on whether the communication was transmitted to "any person," regardless of intended recipient. *See* Dkt. 15 at 18-21 (citing *Cribier*, *Soppett,* and *Orsorio*). But that argument conflates who received the communication with whether the communication itself qualifies as a "telephone solicitation." A communication responding to a prior inquiry from another individual is not transformed into an

11

unsolicited telemarketing call merely because it reached the wrong number. *See e.g., Newhart v. Quicken Loans Inc.*, 2016 WL 7118998, at *4 (S.D. Fla. Oct. 12, 2016) (finding that calls made in response to an inquiry "[we]re not unsolicited telemarketing calls 'initiated' for the purpose of marketing a good or service.").

Plaintiff's cited authorities do not compel a different result. *See* Dkt. 15 at 15-21. For one, *Martin*, *Toney,* and *Abramson* do not address what is required to plausibly allege receipt of a "telephone solicitation" call. In *Bird v. Pro Star Builders, Inc.*, 2022 WL 18216007, at *1 (C.D. Cal. Nov. 28, 2022), the plaintiff alleged far more than a conclusory allegation that the caller sought to solicit the defendant's services, and claimed the caller provided him "with a quote," "set up an appointment with Plaintiff," and "a Pro Star employee appeared at his home and left his Pro Star business card with Plaintiff." Plaintiff pleads no such facts in this case.

In *Kemen v. Cincinnati Bell Tel. Co.*, "no one dispute[d] that [plaintiff] spoke to a [defendant's] employee who encouraged her to purchase some good or service." *See* Case No. 1:22-cv-00152-DRC, S.D. Ohio, Dkt. 17. Thus, the court assumed the purpose of the calls without deciding the issue. *Kemen* is not remotely like this case.

Nor does *Chesbro v. Best Buy Stores, L.P.* salvage Plaintiff's allegations. *Chesbro* does not hold that every call loosely referencing a product or service automatically constitutes a solicitation. *See* 705 F.3d 913, 918 (9th Cir. 2012). Rather, it simply recognizes that courts may consider context when evaluating adequately

12

pleaded factual allegations. Here, Plaintiff provides virtually no factual content regarding most of the alleged calls themselves, instead asking the Court to infer solicitous content based largely on conclusory labels. *Iqbal*/*Twombly* requires more. Therefore, Plaintiff's entire FAC should be dismissed on for this reason, as well.

**Second,** the Opposition also fails to refute Streamline's argument that she must allege that she herself registered the subject telephone number on the National DNC Registry. *See* Dkt. 15 at 11-14. On this front, Plaintiff relies heavily on policy considerations and nonbinding decisions that do not alter the plain language of the governing regulation, which applies only to a "residential telephone subscriber who *has registered his or her* telephone number" on the Registry. *See* Dkt. 14-1 at 24.

Plaintiff attempts to misdirect the Court away from the well-reasoned analysis of *Rombough* fail. As an initial matter, Streamline never argued Plaintiff must prove the FTC maintains records identifying the individual who registered the number or that Plaintiff ultimately must produce such records to prevail on the merits, as Plaintiff suggests. *See* Dkt. 15 at 11-14. Defendant's argument is far narrower and rooted in ordinary pleading principles: because the governing regulation expressly applies only to a "residential telephone subscriber who *has registered his or her* telephone number" on the Registry, 47 C.F.R. § 64.1200(c)(2) (emphasis added), Plaintiff must at least plausibly allege facts showing that she falls within that protected category. *See* Dkt. 14-1 at 24 (citing *Rogers*). Plaintiff plainly failed to do so, as the Motion shows.

Plaintiff's effort to dismiss this issue as "impossible to prove" misses the mark. The issue at this stage is not evidentiary proof; it is whether Plaintiff plausibly alleged this required element. She did not. Nor does Plaintiff's reliance on indefinite registration provisions resolve the issue. *See* Dkt. 15 at 12. The fact that DNC registrations remain active indefinitely says nothing about whether a later user of a reassigned number automatically acquires standing to sue under Section 227(c). The regulation still ties the protection to the subscriber "who has registered" the number. Plaintiff's interpretation effectively reads those words out of the regulation entirely.

In any event, even if courts have disagreed with *Rombough* as Plaintiff notes (*see* Dkt. 15 at 12-14 (citing *Callier*, *Murch*, and *Nichols*)), the existence of contrary district court authority merely confirms this issue is unsettled—not that Streamline's position is "frivolous" or contrary to law, as Plaintiff suggests. Indeed, multiple courts have recognized the significance of the regulation's clear text, have properly applied statutory construction principles, and dismissed complaints that failed to allege the plaintiff personally registered the number. *See, e.g., Rogers*, 2023 WL 2646468, at *4; *Rombough*, 2022 WL 2713278, at *2–4. Plaintiff ignores *Rogers*, where the court reached the same conclusion as in *Rombough*. Moreover, contrary to what the court held in the *Callier* case that Plaintiff cites, it is not a "nitpicky formality" for this Court to apply the plain language of the statutory text, which it is <u>legally required</u> to do here. *See* Dkt. 14-1 at 5 (citing *King*). In short, Plaintiff's arguments cannot override the

14

plain language of the applicable DNC Registry regulation, which this Court is obligated to apply when ruling here, let alone obviate her obligation to plead facts in support of her claims. Since Plaintiff does not demonstrate that she pled any facts in the FAC suggesting that she herself registered the subject number on the Registry, her DNC claim fails and should be dismissed in its entirety on this additional basis.

## V.   **Plaintiff's State Law Claim in Count II Should Also Be Dismissed.**

Plaintiff's Opposition likewise fails to save her state law claim in Count II. Contrary to what Plaintiff proffers, Streamline's argument is not just that Plaintiff seeks overlapping damages. Rather, Count II fails because it is entirely derivative of— and predicated upon—the same deficient factual allegations underlying her TCPA claim in Count I. Plaintiff alleges no distinct conduct, separate communications, or independent factual basis supporting her state law claim; both claims rise or fall together because each depends on the same allegedly unlawful "telephone solicitations." Further, if the Court dismisses Count I, it should decline to exercise supplemental jurisdiction over Count II. *See* Dkt. 14-1 at 25 (citing 28 U.S.C. § 1367(c)). Plaintiff's Opposition does not address, and thus concedes, this point too.

## VI.   **Conclusion.**

For these reasons, the Court should dismiss the entire FAC with prejudice.

15

Dated: May 18, 2026   Respectfully submitted,

By: /s/ Stephen D. Libowsky
_____

**MANATT, PHELPS & PHILLIPS, LLP**

Stephen D. Libowsky (GA Bar No. 451965)
151 N. Franklin Street, Suite 2600
Chicago, Illinois 60606
Tel: (312) 529-6300
Email: slibowsky@manatt.com

*Counsel for Defendant*

16

## CERTIFICATE OF COMPLIANCE

Pursuant to Local Rule 7.1(D), the undersigned hereby certifies that this document has been prepared in accordance with Local Rule 5.1(C).

Dated: May 18, 2026                    Respectfully submitted,

                                       */s/ Stephen D. Libowsky*

                                       Stephen D. Libowsky


## CERTIFICATE OF SERVICE

I hereby certify that I filed the foregoing document electronically on the Court's CM/ECF docket which served same electronically upon all counsel of record.


Dated: May 18, 2026                    Respectfully submitted,

                                       */s/ Stephen D. Libowsky*

                                       Stephen D. Libowsky


17